Moncure, J.
This is a supersedeas to a judgment obtained in the name of the Commonwealth of Virginia, suing for the benefit and at the costs of Israel Leon, against William F. Davis, surety of Charles R. Hawes in an attachment bond executed in pursuance of the Code, p. 602, ch. 151, % 8. The case was twice argued in this court; and many questions were discussed in the argument. But in my view of the case it will be necessary to consider and decide only one of them; which is, Whether the relator Leon can maintain an action on the attachment bond ?
The condition of the bond is set out in the declaration as follows: “ That whereas the said Charles R. Hawes, plaintiff in a certain suit instituted in the Circuit court of the city of Richmond against C. D. Arnsthall, defendant, did, upon the affidavit of him the said plaintiff, filed in the clerk’s office of the said court, obtain from the clerk of the said court an attachment against the estate of the said C. D. Arnsthall for the sum of two thousand and forty-five dollars claimed by the said plaintiff. Therefore, if the said Charles R. Hawes should pay all costs and damages which might be awarded against him, or sustained by any persons by reason of his suing out the said attachment, then the said obligation was to be void; otherwise to remain in full force.”
It is then averred in the declaration that the said *141 Hawes, as plaintiff in the said suit against Arnsthall, did thereupon sue out an attachment against the estate of the said Arnsthall, and did cause the same to be levied upon a large quantity of cigars, the property of the said Leon, the said Hawes pretending that the said cigars were the property of the said Arnsthall.
And it is then further averred that the said cigars were not the property of the said Arnsthall, but were the property of the said Leon, and that the said Leon had sustained great damage by the suing out of the said attachment, to wit, to the value of four thousand and ninety dollars.
Thus it appears that the attachment was against the defendant’s estate generally; and not against specific property. And the question resolves itself simply into this, Whether, if such an attachment be levied on the property of a stranger, he can maintain an action therefor on the attachment bond ?
The attachment was not levied by a seizure of the property, but by a service of a copy of the attachment on the persons in whose hands the property was, who were summoned to appear as garnishees. And it was contended, on the one hand, by the counsel of the plaintiff in error, that the bond is of no force or effect if there be no seizure of property under the attachment ; and, on the other, by the counsel of the defendant in error, that the obligors in the bond are bound for all damages sustained by reason of suing out the attachment, whether it be levied in the one way or the other. Without expressing any opinion on this point, I will consider the question as if the attachment had been levied by a seizure of the property: which will present the case as strongly as possible for the defendant in error.
Then the question recurs, Can a stranger, whose property is taken under an attachment against the *142 defendant’s estate, maintain an. action therefor on the attachment bond? I am of opinion that he cannot. Generally, a sheriff is bound to execute, according to its mandate, a writ which comes to his hands for execution from a lawful source; and he may therefore justify any act done by him in pursuance of the writ. But he can justify no act which the writ does not authorize, though it be done under color of the writ. Such an act is a trespass, for which he is liable like any other trespasser. If, therefore, he arrest the body of A under a writ against the body of B, or take the goods of A under a writ against the goods of B, he is guilty of a trespass. The plaintiff in the writ will also be involved in the trespass if he direct the act to be done; but not merely by reason of his suing out the writ. Generally, the plaintiff is not liable for any thing done in pursuance of the writ, unless it be sued out maliciously and without probable cause.
These were universal rules at common law; but they have been modified to some extent by statute ; and are therefore now stated as general rules. For instance, in regard to the liability of the sheriff for levying an execution or warrant of distress on property, as to which a doubt may arise, whether it is liable to such levy; the statute authorizes' him to require of the plaintiff an indemnifying bond; which, if given, will protect the sheriff against any action-for the seizure or sale of the property, provided the security in the bond be good at the time of taking it. Code, p. 609, ch. 152, § 4, 5 and 6. And, in regard to the liability of the plaintiff for acts done in pursuance of the writ; the statute requires the plaintiff in an attachment, if he wishes the officer to take possession of the property against which the attachment issues,'to give bond with security conditioned to pay all costs and damages which may be awarded against him or sustained by any person by reason of his suing *143 out the attachment. Id. p. 602, ch. 151, § 8. If he does not wish the officer to take possession of .the property, but is content with a mere lien upon it, he is not required to give any bond, and his liability remains as at common law: that is, he is not liable for damages arising from suing out the writ, unless it be sued out maliciously and without probable cause.
The statute in regard to indemnifying bonds does not embrace attachments; but is confined to executions and distress warrants. Why the legislature did not extend it to attachments may not be an easy question to answer. The most that can be said of it is, that it is a casus omissus in legislation: but a casus omissus of which the sheriff may have cause to complain, but not the adverse claimant of the property. The indemnifying bond law was made for the ease of the officer; and exonerates him, to a certain extent, from his common law liability in case of illegal seizures, and from the measures previously necessary to be resorted to, to ascertain the title to the property. But if the bond be not duly required by him, his common law liability is supposed to continue. See Stone v. Pointer, 5 Munf. 290; and Roane, J. in Cole v. Fenwick, 1 Gilm. 134. At first, the law only embraced executions, and did not protect the officer, if the obligors in the bond, though solvent when taken, should thereafter become insolvent. Afterwards, it was extended to distress warrants; and made to protect the officer, if the surety in the bond was good at the time of taking it. It has not yet, as we have seen, been extended to attachments. The adverse claimant of property seized under an attachment has ample remedies, without giving him the benefit of an indemnifying bond. Besides his summary remedy by inter-pleader, whieh is generally sufficient, he may resort for his indemnity to an action of trespass against the sheriff who makes the levy and all persons who aid in *144 making it or direct it to be made; or to an action of debt on the official bond of the sheriff. There can be no reason, then, so far, at least, as he is concerned, for extending the law to attachments.
But it may be said that it is necessary for the protection of the officer making the levy. And it was contended by the counsel for the defendant in error that there is as much reason for requiring an indemnifying bond in the case of an attachment, as in the case of an execution or a warrant of distress; and that the legislature, having expressly provided for such a bond in the two latter cases, would have made a similar provision in the former, if it had not intended the attachment bond to effect the same object. If they had intended to extend the provisions of the indemnifying bond law to the case of attachments, they would have done so expressly, and not by obscure implication. To give the attachment bond such an effect as this would be to convert it into a general indemnifying bond, applying to all property which might thereafter be taken under color of the attachment: which would be very unreasonable. In the case of executions and distress warrants, the officer can require an indemnifying bond, only when a doubt arises whether property is liable to be levied on. And the plaintiff, when so required, can give it or not, at his discretion. But in the case of attachments, on the construction contended for, the officer might, of his own mere motion, and without the knowledge of the plaintiff, seize property plainly not liable to the attachment, and thereby render the obligors in the attachment bond liable for all- damages arising from such seizure.
But the law which provides for the execution of that bond will, I think, admit of no such construction. It was enacted diverso intuitu. It was not made for the ease of the officer, and to indemnify him against the consequences of his unauthorized act; but was made *145 for the benefit of the owner of the property against which the attachment issues, and to indemnify him against the consequence of acts which are authorized by the attachment. The indemnifying bond applies to acts outside of the writ; the attachment bond to acts inside of it, or done in pursuance thereof. These latter acts the officer is bound to perform ; and they cannot be lawfully resisted, no matter what damage they may inflict. The common law liability of a plaintiff for damages arising from the suit, was not considered by the legislature sufficient indemnity against the consequences of a wrongful seizure of property in pursuance of an attachment. The execution of an attachment bond with security has, therefore, been required.
That this is the true construction of the attachment law is obvious, both from the terms of the law itself, and the circumstances under which it was enacted. As to the terms of the law; the condition of the bond as therein prescribed has already been set forth. It covers no damages for taking property which the attachment does not command to be taken. Such damages are not sustained by reason of suing out the attachment; but are sustained by reason of an unauthorized act of the officer. The undertaking of the obligors is, that the attachment is properly sued out, and the claim of the plaintiff’ well founded. They do not undertake that the officer will commit no trespass in its execution. They do not authorize him to levy it on any property which he may think proper, or the plaintiff may direct him to levy it on. A person may be willing to become security in an attachment bond, knowing the debt to be due, and that the debtor is a nonresident or absconding debtor, but very unwilling to become security that the officer will do no wrongful acts under color of the attachment. The bond was not intended to enlarge the attachment, but to run on all fours with it. The attachment may be against the *146 defendant’s estate, or against specific property. If it be against the defendant’s estate, the bond applies only to that estate, and enures to the benefit of the defendant only. If it be against specific property, the bond applies to the owner of that property, whoever he may be, whether the defendant or any other person, and enures only to the benefit of such owner. The attachment may be against specific property when the suit is to recover such property, (Code, p. 601, § 2,) •or in certain cases, when it is against the commander •or owner of any steamboat or other vessel, or the owner of any raft or river craft navigating the Ohio river or any of its tributaries within the jurisdiction of this state. (Id. p. 602, § 5.) The law prescribes but one form of attachment bond, and therefore prescribes such form as will suit both cases, as well an attachment against specific property, as an attachment against the defendant’s estate generally. If the latter had been the only kind of attachment to be provided for, the bond might have been made payable to the defendant, and conditioned only for his indemnity. But it being necessary to provide for both kinds, the bond is required to be in such form as will apply to both or either. The defendant is the only person who can sustain any damage by reason of suing out an attachment against his estate; but others may sustain damage by reason of suing out an attachment against specific property. In providing for the execution of a bond conditioned to pay all damages sustained by any person by reason of suing out the attachment, both cases are provided for. If the plaintiff shall give the bond, the officer is required to “ take possession of the property specified in the attachment, or when no such property is specified, of any estate, or effects of the defendant, or so much thereof as is sufficient to pay the plaintiff’s claim i” in other words, of the property against which the attachment issues, and no other. *147 Id. § 8. By giving the bond he acquires a right to have that property taken; but that only. If no bond be given; and perhaps whether a bond be given or not, he may, in writing, designate to the officer the names of persons to be summoned as garnishees. Sections 7 and 9. But this summons applies to no specific or particular estate; but only to the estate generally of the defendant in the hands of the garnishees ; and not to the estate of any other person in their hands. The garnishees are not authorized, by reason of the summons, to detain the estate of any other person in their hands. And therefore no other person can have any cause of action on the attachment bond for damages arising from the detention of property in the hands of garnishees. Whether the defendant can have such cause of action, is a question which it is unnecessary to decide.
As to the circumstances under which the law was enacted. Until recently, an attachment could only be issued against the estate of the defendant generally, and not against specific property. 1 Bev. Code, p. 476, § 6. The bond provided for by that section was required to be payable to the defendant; and to be conditioned for satisfying all costs which should be awarded to the defendant in case the plaintiff should be cast in his suit, and also all damages which should be recovered against the plaintiff for his suing out the attachment. There can be no doubt but that that bond enured only to the benefit of the defendant; and could not be resorted to for the indemnity of a person on whose property the officer had unlawfully levied the attachment. The damages were recoverable against the plaintiff, only “for his suing out the attachment ;” and of course not for a trespass committed by the officer in levying it contrary to the mandate of the writ. This manifest construction was not altered by the words of the statute giving a right of action *148 on the bond to “ the party entitled to such costs or damages,” who could only be the defendant in the attachment or his representatives. By the act of February 24, 1827, Supp. R. C. p. 239, ch. 182, § 1, an attachment'was, I believe, for the first time given against specific property. It authorized an attachment to be issued against a ship, steamboat or other vessel, &c. under the circumstances therein mentioned. But provided that no such attachment should issue until bond should be given, payable to the person against whom the suit was brought, conditioned to indemnify the obligee in such bond, and the owner of such ship, steamboat or. other vessel against any loss which they ■or either of them might sustain by reason of such attachment, in case the defendant should prevail in the suit. Here we see that the bond was properly adapted to this new case, and made to provide for the indemnity, not only of the defendant, but of the owner of the property attached, who might be a different person from the defendant. It -was still, however, made payable to the defendant, the plan of requiring such bonds to be payable to the commonwealth not having then been devised. This bond, certainly, did not enure to the benefit of any other person than the defendant or the owner of the property against which the attachment issued; for it was, by its terms, expressly confined to them. By the act of March 4, 1846, Sess. Acts, p. 73, ch. 105, an attachment was given against specific property in another case. It authorized an attachment to be issued against a steamboat, raft, or other water craft navigating the Ohio river or any of its tributaries within the jurisdiction of this state, under the circumstances therein mentioned. No bond was required by that act. But it provided, (§ 7,) that if any attachment should be sued out by virtue of the act without reasonable or proper cause, the person suing it out should be liable to the owner of the pro *149 perty attached for any damage sustained by reason of the seizure and detention thereof; and such owner, if he appeared to the suit, might file a special therein, alleging that such attachment was sued out without reasonable or proper cause, and the damages sustained by reason thereof; and if, upon the trial, the jury should find that such attachment was in fact sued out without reasonable or proper cause, such jury should assess the damages sustained by reason thereof, and judgment should be entered-in favor of the party injured. These acts, giving the right of attachment against specific property, were substantially incorporated in the Code: And there was also incorporated therein a new and important right of attachment against specific property, where the suit is to recover such property:' in other words, in an action of detinue. This new provision was a consequence of the abolition, by the Code, of the right to require bail. Revisor’s Report, p. 838. In providing for the execution of an attachment bond to suit all the cases in which it was necessary, as well the ordinary case of a general attachment against the defendant’s estate, as the cases of specific attachment before mentioned, terms were used which would suit all of them: and conditions which had been prescribed for general and specific attachments respectively by former laws, were substantially embodied into one form of condition in the Code. It was obviously not designed by the legislature to make any material change in the condition of the bond. All these bonds, as well those prescribed by former laws as that prescribed by the Code, have substantially the same condition, mutalis mutandis. The words “for suing out such attachment,” in the bond, prescribed by 1 Rev. Code 477, § 7; the words “by reason of such attachment,” in that prescribed by the act of February 24, 1827, Supp. R. C. p. 240, § 1, and the words “ by reason of his suing out the attachment,” *150 in the Code, p. 602, § 8, are the same in meaning and effect; and all alike apply only to damages which legitimately result from the execution of the writ in pursuance of its mandate. The revisors plainly showed that they intended to propose no change in this respect, not only by their using substantially the same language that was used in the old law, but by their taking no notice of any such intention, as they certainly would have done if they had contemplated so important a change. The changes which they did intend to propose are stated aud explained at length in a note to their report, p. 756. Their chief object was to produce uniformity in the attachment laws; and among other things, in regard to attachment bonds, which had been required in some and not in other laws, without any apparent reason for the difference. They accordingly proposed to make the laws “ more harmonious and consistent, by requiring security when the plaintiff thinks it necessary for his safety that the property should be taken by the officer, but to require none for any attachment when he is content with the lien on the property in the hands of home defendants.” Id. p. 757-58. Security for what? For the same thing, in substance, for which security had been required by some, but not by other of the former laws. The legislature adopted this recommendation of the revisors.
It is believed that while attachment laws exist in most, if not all, of the other states of the Union, the plaintiff has, in none of them, been required to give an attachment bond in such form as to provide for indemnity against the unlawful acts of the officer under the writ. Much less has it, in any of them, been held, that a bond conditioned, in the ordinary form, for indemnity against damage sustained “by reason of suing out the attachment,” or the like, has the effect of a bond of indemnity against such unlawful acts.
I have now fully expressed my views of the princi *151 pies which, iu my opinion, must govern this case. I would not have felt justified in saying so much, had I not thought that the novelty and importance of the question considered, and the extent and ability of the argument of counsel, required me to do so. It now only remains to apply these principles to the case; which can be done in very few words. The attachment in this case was against the defendant’s estate generally. The bond strictly conformed to the directions of the Code. An action can be sustained upon it, according to what I have said, only at the relation of the defendant in the attachment. This action was brought at the relation, not of the defendant, but of a stranger, and for a cause not within the terms of the bond. The defect is not in the form, but in the foundation of the action: and is no more cured by the Code, ch. 181, § 3, than it would have been by the statute of jeofails, 1 Rev. Code of 1819, ch. 128, § 103. It follows, on the authority of Ross v. Milne & wife, 12 Leigh 204, and Boyle's adm'r v. Overby, 11 Gratt. 202, that the judgment of the Circuit court must be reversed, and judgment entered for the plaintiff in error, non obstante veredicto.
Allen, P. and Daniel and Lee, Js. concurred in the opinion of Moncure, J.
Samuels, J. dissented.

Judgment reversed, and judgment for the appellant non obstante the verdict.