MONCURE, P.,
delivered the opinion of the court:
The first question presented for our decision in this case is, whether an action can be maintained against a sheriff and his sureties on his official bond, for a trespass committed by him in taking the goods of the relator, on an attachment issued against the property of another?
We are of opinion that the action can be maintained. The condition of the bond is, for the faithful discharge of the duties of the office of sheriff, according to law. A sheriff who takes the property of A under an attachment ’“’against the property of B, thereby not only commits a trespass, but plainly violates the duty of his office and breaks the condition of his official bond. His duty is, to levy the attachment, according to its mandate, on the property of B; instead of doing which, he levies it on the property of A. He does this in his character of sheriff, colore officii, and not as a naked trespasser without color of authority; and it is consistent alike with sound policy and legal principles that he and his sureties in his official bond should be liable to the party injured for all damages arising from the wrongful act.
This question, it is believed, has never before been directly adjudicated by this court. The affirmative of the question was assumed to be law in the opinion delivered in the case of Davis v. The Commonwealth, 13 Gratt. 139, 144, in which all the judges but one concurred; and it does not appear that he differed from the others in this respect. But the question was not material to the decision of that case.
A similar question has been adjudicated in some of the other states, in which the condition of the sheriff’s bond is substantially the same as it is here. In Carmack v. The Commonwealth, 5 Binn. R. 184, the Supreme Court of Pennsylvania held that the sureties of a sheriff are liable in damages for the sheriff’s trespass in seizing and selling the goods of B. under an execution against A. All the learned justices, Tilgh-man, Yeates and Brackenridge, concurred in the judgment in that case, and delivered seriatim opinions, in which they strongly vindicated the policy of the law as construed by them. Similar decisions have been made in Maine. Archer v. Noble, 3 Greenl. R. 418; Harris v. Hanson, 11 Maine R. 241; in Kentucky, Forsythe v. Ellis, 4 J. J. Marsh. R. 299; Commonwealth v. Stockton, 5 Monr. R. 192; in Missouri, State v. Moore, 19 Missouri R. 369; and in *California, 4 Cal. R. 194, Van Pelt v. Littler. The Supreme Court of New York decided otherwise in ex parte Reed, 4 Hill’s R. 572; but that case has been since overruled by the Court of Appeals of the same state, in The People v. Schuyler, 4 Comst. R. 173, in which it was held that “where a sheriff having in his hands a process” (which in that case, as in this, was an attachment) “against the property of the defendant therein, seizes by virtue thereof the goods of another person, he is guilty of official misconduct, and he and his sureties thereby become liable upon his official bond.” See also Dennison &c. v. Plumb &c., 18 Barb. Sup. Ct. R. 89.
There is no proposition better settled, and especially in this state, than that a sheriff is liable civiliter, though not criminaliter, for all the acts of his deputy colore officii, and is liable therefor in the same form of action as if they had been actually committed by himself; and consequently that he is liable in an action of trespass vi et armis for the act of his deputy in taking the goods of A under an execution against B. Mosby’s adm’r & als. v. Mosby’s adm’r, 9 Gratt. 589, 602-605; and the cases cited therein. It seems to result, necessarily, from that proposition, that the sheriff is not only personally liable in such a case, but he and his sureties are liable on his official bond.
On common law principles governing the ordinary relation of principal and agent, the sheriff would not be liable in such a case; but on principles of public policy applying to the relation of a sheriff and his deputy, the former is liable in such a case; and on the same principles, it would seem that he and his sureties are liable on his official bond. He is liable for his deputy, because the act of the latter is done under color of the office of sheriff, and is thus a quasi official act. Van Pelt v. Littler, supra. Certainly the deputy and his sureties in his bond *to the sheriff for the faithful discharge of the duties of his office of deputy, would be liable in an action on that bond by the sheriff to recover damages sustained by the latter from such an act of the former. Whj- then are not the sheriff and his sureties liable on his official bond for such an act of his deputy; the condition of the two bonds, mutatis mutandis, being substantially the same?
The next question to be considered is, whether the relator has lost his right of action in this case by claiming the property in the attachment cases; and after it was decreed to be sold, and the proceeds of sale were decided to be his and decreed to be paid to him, by recovering the same by a motion against the sheriff and his sure *282 ties and receiving the amount of such recovery.
We are of opinion that he has not thus lost his right of action in this case. It is true that where a plaintiff has concurrent remedies for the same demand, and elects one of them, and prosecutes it to a judgment, he cannot then resort' to another, but is bound by his election, although it majr be a bad one. It is also true that he cannot divide one cause of action into two. The plain reason of these rules of law is, that a defendant will not be suffered to be harassed by two suits when one would answer all the purposes of justice. Therefore, when A wrongfully takes the property of B and sells it, B may bring trespass, trover, detinue or assumpsit for money had and received, against A at his election •, but having elected one of these forms of action, and prosecuted it to judgment, he cannot then abandon it and bring another. Trespass comprehends the whole injury, as well the wrongful taking as the wrongful detention or conversion, and the value of the property, unless it be restored. By bringing detinue or trover, the plaintiff waives all claim for the wrongful taking of the property; and by bringing assumpsit he also waives all claim for the wrongful detention *and conversion, affirms the sale, and makes the proceeds of it money had and received to his use. It would be inconsistent to permit him, after electing and prosecuting to judgment either of the three last named actions, and especially the last, to resort to the first. The case of Hite v. Long, 6 Rand. 457, relied on by the counsel for the plaintiffs in error, involved this principle. But the principle does not apply to this case. The attachment suits were not brought by the relator. The attachments were levied upon his property, and he was made a home defendant to the suits, which were foreign attachments in equity. He was not a debtor of the plaintiffs, nor was his title to the property in question brought in controversy by the bills. The attachments against, the debtor defendant were levied on his, the relator’s, property', and thus a trespass was committed by the sheriff who made the levy. The relator, being made a defendant in the case, of course asserted therein his claim to the property, as he could, and no doubt would have done, if he had not been made a defendant. The property, being perishable, was in the progress of the suit decreed to be sold. And afterwards, the question of title being decided in favor of the relator, the proceeds of sale were decreed to be paid to him by the sheriff who made it; but not being paid, the amount was recovered by motion against him and his sureties. How this was altogether a different claim from that of the relator against the sheriff for the trespass. The sheriff was not a defendant to the attachment suits. The main controversy in that case was between the attaching creditors and their debtor; incidental to which was a controversy between he former and the relator, as to whether the property attached belonged to him or their debtor. That controversy was determined in the relator’s favor, and of course the proceeds of the property were decreed to be paid to him. They could not be decreed to *be paid to the creditors, because the property did not belong to their debtor, nor to the sheriff, because not only did not the property belong to him, but it would have been real injustice both to his sureties and to the owner of the property to have made such a decree. The only proper disposition of the money therefore was to decree it to be paid to the owner of the property. But such decree and payment cannot extinguish his claim against the sheriff for the trespass, any more than would the return of the property itself to him, either by the sheriff who took it, or by the order of the court in the attachment suits. The only effect of such return would be to mitigate the damages in the action for the trespass, and the decree and payment aforesaid can have no greater effect. They have had that effect, by the proceeds of sale being credited on the amount due for the value of the property, in the action brought by the relator against the sheriff and his sureties for the trespass. The relator would probably have been willing to have received his property, after it was taken under the attachments, if it had not been impaired in value, and to have asserted no further claim for the trespass. But it seems to have been impaired in value while in the hands of the sheriff, and at all events was sold for less than half of its value at the time it was taken. The relator then, and before the proceeds of sale were decreed to be paid to him or the question of title was decided in his favor in the attachment suits, brought his action for the trespass on the official bond of the sheriff. That action came on to be tried after he recovered and received the amount decreed to him in the attachment suits as aforesaid, and he recovered in the action the value of his property when taken, credited by the amount of the proceeds of the -sale of it. -We think he was entitled to such a recovery.
The next objection taken to the judgment is, that the ^judgment on the motion against the sheriff and his sureties, for the proceeds of the sale made .in the attachment suits, was for the penalty of the bond to be discharged by the payment of the said proceeds; and not by that only, but also by the payment of any such further sums as might be afterwards assessed or be found due upon a scire facias assigning a further breach; and if the latter judgment was not in fact rendered in such form as to provide for a further breach as aforesaid, it is contended that it ought to have been so rendered, under the Code, ch. 177, 'i 17, and must have the same effect as if it had been so rendered; and consequently, that that judgment is a bar to this action, and precludes the relator from any other remedy upon the official bond of the sheriff than by scire facias under the judgment already rendered.
*283 It is true that that statute does require that the judgment shall be entered in the above mentioned form, in actions on bonds conditioned for the payment of an annuity, or of money payable bjr instalments, where there are further payments of the annuity or further instalments to become due after the commencement of the action, or for the performance of other collateral agreements. But it is at least doubtful whether that statute was intended to apply to actions on official bonds; although, in regard to such bonds, it has been held by this court, that the judgment ought to be so entered, under a statute of like import to that in question, and from which the latter was derived. The source of these statutes is the well known act of 8 and 9 W. 3, ch. 11, f 8, in regard to the assignment of breaches on bonds with collateral conditions. 1 R. C. 1819, p. 509, l 82; 1 Rob. Pr. old ed. 153. In no case has it been decided that even where a judgment on an official bond has been so entered, it is a bar to any other action on the bond, and precludes any other recovery upon it than by scire facias *under the judgment already rendered for the penalty; much less would it be a bar where the judgment is not so entered, but entered in the general form. It would be unreasonable in the last degree to give to the judgment such an effect. The relators may be altogether different, and their causes of action different. They may know nothing of the actions brought by one another, which may be in different and distant courts, and it would be extremely inconvenient to require any party injured by the default of the officer, and about to bring an action on his bond, to ascertain at his peril whether a judgment had already been recovered upon it, under which he might proceed by scire facias. It may be convenient enough to require the judgment on the bond to be entered in the form prescribed by the statute; but not to make it a bar to a future action, whether the judgment be entered in that form or not.
But there is another statute, referred to by the counsel for the defendant in error, which seems to put this matter at rest. It will be found in the Code, ch. 13, 8, 9, and relates to bonds taken by courts and officers, in regard to which it is provided, that “suits may be prosecuted from time to time upon’ ’ any such bond ‘ ‘in the name of the commonwealth, for the benefit of any person injured by any breach of the condition of such bond, as often as any such breach may be alleged, until damages shall be recovered for such breaches equal to the penalty of the bond.” The statute expressly gives the right to bring separate actions for separate causes of action; and it seems to be eminently proper that such should be the case. The breaches are wholly distinct causes of action, in favor, generally, of wholly distinct persons, and there is no reason or propriety of confounding them in one action. The cause of action in such cases is the breach of the agreement contained in the condition, and not the ^penalty of the bond, which is so completely nominal that its non-payment to the commonwealth need not be averred in the declaration. 6 Munf. 401.
The last objection taken to the judgment is, that it is not in pursuance of the Code, ch. 177, | 17; that is, for the penalty of the bond to be discharged by payment of the agreed damages and such further sums as may be afterwards assessed as aforesaid, but is simply for the sum of $2,937.98 (the agreed damages), with interest &c. Besides what has already been said which is pertinent to this objection, a conclusive answer to it is, that by the case agreed the parties expressly consented that the court, if of opinion that the law is for the plaintiff, might enter up a judgment for $2,937.98, with interest as aforesaid and costs. But in addition to this, the error, if any, is a mere informality in the entry of the judgment by the clerk, in regard to which the Code, ch. 181, § 3, provides that “no judgment or decree shall be stayed or reversed for any informality in the entry of the judgment or decree by the clerk.”
We are, therefore, of opinion that the judgment ought to be affirmed.
Judgment affirmed.