# Wheeling.

## MITCHELL, SHERIFF v. CHANCELLOR et al.

### Decided November 9, 1878.

1878
Special Term

1. Equity has jurisdiction, wherever a lost instrument is to be set up, notwithstanding courts of law now exercise jurisdiction in the same case.

2. In such a case a court of chancery, having jurisdiction for one purpose, will adjudicate the whole merits of the cause.

3. Where a court of chancery is resorted to for the purpose of setting up a lost instrument, the rules of that court are applicable; and all persons, materially interested in the subject matters, or who will be directly affected by the decree, are necessary parties to the suit.

4. But where a person has a mere interest in the question arising out of a collateral liability, such interest does not render him a necessary, or proper, party.

5. Where the plaintiff has shown a right to relief against the defendants before the court, his bill ought not to be dismissed, because the proper relief cannot be extended to him, in consequence of his omission to make the necessary parties. In that case the plaintiff ought to have leave to amend his bill.

6. But where the plaintiff in equity has shown no right to relief, an Appellate Court will not reverse a decree dismissing his bill, although all the parties directly interested in the subject matter were not before the court.

7. The provision in an attachment bond, given under section 6, chapter 136 Acts of 1871, to pay all damages, "sustained by any person by reason of their suing out said order of attachment," does not enure to the benefit of the sheriff, who levied the attachment and took into his possession, and took care of, the attached property.

Appeal from and *supersedeas* to a decree of the circuit court of Wood county, rendered on the 23d day of March 1878, in a suit in chancery in said court then pending, wherein Benjamin F. Mitchell was plaintiff, and William N. Chancellor and William P. Thompson were defendants, granted on petition of said Mitchell.

*1878 Special Term*

*Mitchell, Sheriff v. Chancellor et. al.*

Hon. James Monroe Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, furnishes the following statement of the case:

At February rules, 1878, of the circuit court of Wood county B. F. Mitchell, late sheriff of Ritchie county, filed his bill in chancery, in which he alleged, that while he was the sheriff of Ritchie county, on the 29th day of December, 1874, Joseph P. Maxwell and Wm. E. Wheeler, then partners in trade as Maxwell, Wheeler & Co., instituted a suit in chancery, in which there was an attachment, in the circuit court of Ritchie county against the West Virginia Oil and Oil Land Co. for the recovery of $43,624.49 with interest, &c.; and at the same time sued out an attachment, requiring the sheriff of said county, or any constable therein, to attach, and take into possession, the estate of defendant, sufficient to pay the debt, interest and costs, and to make return of his proceeding, &c. That said order of attachment was placed in his hands, as the sheriff of Ritchie county, by the clerk of the circuit court of said county, and that by virtue thereof he levied the said attachment on the 30th day of December, 1879, on the real and personal property of the defendant, and took into his possession the personal estate of said defendant, as required by said order, and had the same in his possession until the 23d day of April, 1875, a period of one hundred and thirteen days, at which time a forthcoming bond was given by the defendant; and said attachment was relieved. The proper exhibits accompany the bill.

That at the time of the suing out of said attachment the said Joseph P. Maxwell, one of the said plaintiffs, together with William N. Chancellor and William P. Thompson as his sureties, gave a bond signed by them respectively, and sealed with their seals, in a penalty of double the amount of the claim sued on, with a condition to " pay all costs and damages, which might be awarded against said plaintiffs, Maxwell, Wheeler & Co., in said suit, or sustained by any person by reason of the suing out said order of attachment ; and to pay to any claimant of any property, seized or sold under or by virtue of said attachment, all damages, which he may receive in consequence of such seizure, or sale ; and also to warrant and defend to any purchaser of the property such estate, or interest therein, as is sold." Said bond was given in accordance with the provisions of section 6 chapter 136 of the Acts of the Legislature passed February. 27, 1871. The security thereon was approved by the clerk of the circuit court of Ritchie county, and the bond filed in his office with the papers in said cause.

That owing to the loss of said bond, he is unable to state, whether it was made payable to the West Virginia Oil and Oil Land Co., or the State of West Virginia ; but he is advised, that it was made payable to the defendant in the suit , the West Virginia Oil and Oil Land Co.

That the order of attachment having come to his hands, as sheriff, it was his duty to take possession of, and carefully keep, the property so attached until the release thereof by the giving of the forthcoming bond as aforesaid, which he did.

That the personal property so attached was scattered over a large tract of territory, the oil of great value requiring constant watching ; and that the costs and damages, sustained by plaintiff in keeping the same, were at least $5.00 per day during the period of one hundred and thirteen days, amounting to the sum of $565.00 in

all; that a part of said costs and damages, to-wit: the
sum of $200.00 was paid to plaintiff on or about the 4th day of August, 1877; and that the balance still remains
due and unpaid.

That Joseph P. Maxwell departed this life on the—— day of ———, 1876; and that neither he in his lifetime, nor the said William E. Wheeler, William N. Chancellor or William P. Thompson, or either of them, at any time paid to plaintiff the said sum of $365.00, the balance due as aforesaid; and he charges, that the said Maxwell, Chancellor and Thompson have committed a breach of the conditions of the said attachment bond; and that plaintiff is entitled to recover of said surviving obligors the costs and damages, sustained by him as aforesaid.

The bill then sets up the fact, that the said bond was lost or destroyed; and that due diligence had been used to find it, without avail. That the suit, in which said bond was given, had been removed to the circuit court of the United States for the district of West Virginia, where it is still pending.

The prayer of the bill is, that the said Chancellor and Thompson, surviving obligors of themselves and Joseph P. Maxwell, deceased, be made parties defendant to the bill, and required to answer the same; that he might have a decree against them for the penalty of said bond, to be discharged by the payment of $565.00, with interest thereon from the 23d day of April, 1875, subject to a credit of $200.00, paid, &c., and the costs of the suit; and for general relief.

A proper affidavit of the loss of the bond accompanies the bill.

The defendants appeared and demurred to the bill on two grounds: 1st. For want of proper parties thereto; 2d. For want of equity therein.

On the 23d day of March, 1878, the case came on to be heard upon the demurrer, and was argued by counsel; and the court " was of opinion, that there was no equity in the bill," and on that ground sustained the demurrer;

and being of opinion, that the bill could not be so amended as to give a cause of action, dismissed it, with costs.

To this decree an appeal and *supersedeas* was allowed.

*Walter S. Sands,* for appellant, cited the following authorities :

Acts of 1871 chap., 136, § 6; Code ch. 106, § 13; 12 Leigh 204; Code ch. 71, § 2; 2 Matt. Dig. 25 n.; Acts 1872-3 ch. 42, § 2; 4 Wend. 414; 3 McLean 368; 14 Gratt. 42; 11 W. Va. 549; 13 Gratt. 139; Code 1859 p. 600; Code 1869 p. 79; Code 1860 p, 767. Code 1869 p. 662 ; Acts 1875 p. 161; 4 Rand. 158; 1 Dan. Ch. Pr. 287.

*John A. Hutchinson,* for appellees, cited the following authorities :

Acts 1871, ch. 136, § 6; Code ch. 106, § 6; Code, ch. 71 § 2; 2 Rob. Pr. 40 and cases cited; 2 Munf. 337; Code, ch. 10, § 2; Code 1860, ch. 151, § 8; 13 Gratt. 139; Drake on Attch. (4th ed.) § 162; 3 Rob. Pr. 349; 1 Wait Act. & Def. 427; 12 Leigh 204; 3 Metc. (Ky.) 121; 48 Mo. 210; Acts 1835, ch. 78, 161; *Id.* ch. 137, § 17.

JOHNSON, JUDGE, delivered the opinion of the Court :

The question here presented is : "Should the demurrer to the bill have been sustained ?

And first: Were the proper parties before the court ? It is well established, that equity has jurisdiction, wherever a lost instrument is to be set up, notwithstanding courts of law now exercise jurisdiction in the same cases. *Hickman* v. *Painter,* 11 W. Va. 386. It is also true, that in such a case a court of chancery, having taken jurisdiction for one purpose, will adjudicate the whole merits of the case. *Id.* 386. And where a court of chancery is resorted to for the purpose of setting up a lost instrument, the rules of that court are applicable; and all persons materially interested in the subject matter, or who

Syllabus 1.

Syllabus 2.

Syllabus 3.

will be directly affected by the decree, are necessary parties to the suit.

As to the first ground of demurrer, it is clear, that the administrator of Joseph P. Maxwell, deceased, who was the principal in the attachment bond, was a necessary party to the suit, if there was equity in the bill, for this, among other reasons, because the defendants, the other obligors in the bond, who were only his sureties, would be entitled to a decree over against the administrator of the deceased principal.

It is argued by counsel for appellees, that the West Va. Oil and Oil Land Co., the defendant in the attachment suit, was also a necessary party to this suit. I think not. In *Austin* v. *Richardson*, 1 Gratt. 326, it was held, that "where a person has a mere interest in the question, arising out of a collateral liability, though the decree may upon that question be evidence for, or against, him in some future controversy, such interest does not render him a necessary, or even a proper, party." The interest of the defendants; as well as the plaintiffs, in the attachment suit was not sufficiently direct in this suit to render them necessary parties thereto. If there was equity in the bill as to the plaintiff, the court should not have dismissed it for want of parties; but should have sustained the demurrer, because the proper parties were not before the court, and given leave to amend.

Where the plaintiff has shown a right to relief against the defendants before the court, his bill ought not to be dismissed, because the proper relief cannot be extended to him, in consequence of his omission to make other necessary parties. In that case the plaintiff should have leave to amend his bill. *Jameson's adm'r* v. *Deshields*, 3 Gratt. 12. But where a plaintiff in equity has shown no right to relief, an Appellate Court will not reverse a decree dismissing his bill, although all the parties directly interested in the subject matter were not before the court. *Id.* 13.

To ascertain then, whether the court erred in dismiss-

*(margin notes: 1878 Special Term. Mitchell, Sheriff v. Chancellor et. al. Syllabus 4. Syllabus 5. Syllabus 6.)*

1878
Special Term.

Mitchell, Sheriff
v.
Chancellor et al.

ing the bill in this cause, but one enquiry is necessary: Is there equity in the bill? The determination of this question, depends upon the further question: Had the plaintiff a right of action on the bond given in the attachment cause? Was the bond made for the benefit of the sheriff, who levied the attachment and took the property into his possession?

It is insisted by counsel for appellants, that the condition of the bond " to pay all costs and damages  *  *  *  * sustained by any person by reason of their suing out said order of attachment," applies to, and covers, the claim of the plaintiff in this suit. It is very clear, if a suit could be brought at all, which we do not now decide, upon the bond by the plaintiff, on the first clause of the condition: "to pay all costs and damages, which might be awarded against said plaintiff," that the suit here is prematurely brought, as the bill shows, that in the attachment suit no "costs and damages have been awarded against the plaintiffs, as the said suit is yet pending and undetermined; and therefore as yet there has been no breach of that condition.

<span class="margin">Syllabus 7.</span>

But it is claimed, that the clause "or sustained by any person by reason of their suing out said order of attachment," is for the benefit of the plaintiff, and that the plaintiff has suffered damage by reason of the suing out of said attachment, as he expended money, &c., in and about taking care of the attached property, which he was by law compelled to do; and that as the property has been released from the attachment by the bond of the defendant, given before the institution of this suit, and he has not been paid by plaintiffs for taking care of said property, and repaid the money, he has laid out and expended in and about taking care of the same, that there has been a breach of the condition of the bond, and that he has a cause of action against the obligors in the attachment bond.

The appellant relies upon section 2 of chapter 71 of the Code, and *Nutter* v. *Sydenstricker* 11 W. Va. 535, to show,

that he has such cause of action.  Under this authority he can certainly maintain an action on said bond, *if made* *for his benefit;* otherwise he cannot.  The question is therefore :  Was the said bond made for the benefit of a sheriff, who leived the attachment and took care of the property ?

The case of *Davis* v. *Commonwealth for Leon* 13 Gratt. 139, was a suit brought upon an attachment bond by a third party, whose property was levied upon under the the attachment; and the question was, whether he could sue upon the bond.   The condition of the bond contained the same language, relied upon to sustain the suit in the cause before us, that is, "to pay all costs and damages which might be rendered against him  *or sustained by any person by reason of his suing out the attachment.*

Moncure, Judge, in delivering the opinion of the court said : " The law covers no damages for taking property, which the attachment does not command to be taken.  Such damages are not sustained by reason of suing out the attachment; but are sustained by reason of an unauthorized act of the officer.  The undertaking of the obligors is, that the attachment is properly sued out, and the claim of the plaintiff well founded.  They do not undertake, that the officer will commit no tres-pass in its execution.  They do not authorize him to levy it on any property, which he way think proper or the plaintiff may direct him to levy it on.  A person may be willing to become surety in an attachment bond, knowing the debt to be due, and that the debtor is a non-resident or absconding debtor, but very unwilling to become security, that the officer will do no wrongfu acts under the color of the attachment.  The bond was not intended to enlarge the attachment, but to run all fours with it.  The attachment may be against the de-fendant's estate, or against specific property.  If it be against the defendant's estate, the bond applies only to that estate, and enures to the benefit of the defendants only.  If it be against specific property, the bond ap-

plies to the owner of that property, whoever he may be, whether the defendant or any other persons, and enures only to the benefit of such owner.  *  *  *.  The defendant is the only person, who can sustain any damage by reason of suing out an attachment against his estate; but others may sustain damage by reason of suing out an attachment against specific property.  In providing for the execution of a bond conditioned to pay all the damages sustained by any person by reason of suing out the attachment both cases are provided for.  *  *  *. The attachment in this case was against the defendant's estate generally.  The bond strictly conformed to the directions of the Code.  An action can be sustained upon it, according to what I have said, only at the relation of the defendant in the attachment.  This action was brought at the relation not of the defendant, but of a stranger, and for a cause not within the terms of the bond. The defect is not *in form* but in the *foundation* of the action."

There have been changes in the bond required to be given in an attachment case, since the decree above referred to was rendered; but none of these changes affect the cause before us.  The plaintiff in this cause contends, that the condition of the bond, to pay all damages that might be sustained by any person "by reason of their suing out said order of attachment," enures to his benefit.  No authority is cited to show, that such is the fact.  The case in 13 Gratt. *supra,* repudiates the idea, that a bond, containing the same provisions substantially, has any such effect.  We do not think, that it was intended to cover sheriff's fees and costs.  That was no part of the obligation entered into by the obligors in the bond. They obliged themselves to pay all such costs and damages, as might be awarded against the plaintiffs in the attachment.

The sheriff cannot sustain an action or suit against the obligors in the bond, as having " sustained damages by reason of suing out the attachment."  He has never been

held, as being within the terms of the bond, and we can-
not see, how the said provision could embrace him.
Even if he was unprovided for in any other way, it
would not mend the matter; because he could not be
protected by the bond, unless he was one of the class
embraced within its provisions. Evidently the mind of
the Legislature did not contemplate his fees and costs
when it used the language, "or sustained by any person
by reason of his suing out said attachment." If the
sheriff would have such right of suit, why not the clerk
of the court for his fees? And would it not be absurd to
say, that the clerk "was damaged by reason of the
suing out of the attachment," because his fees were un-
paid.

It is a mistake to suppose there is no protection for the
sheriff, other than the attachment bond. The acts of
1872-3 were in force at the time the sheriff was re-
quired to levy the attachment in December, 1874; and
chapter 51 of those acts protect him. Section 9 on
sheriff's fees, provides among other things, how much
he shall have per day for keeping horses, cattle, sheep,
hogs, &c., distrained, or levied on; and then provides:
"The officer shall be re-paid any necessary expense in-
curred by him in keeping property not before mentioned,
or in removing any property." Section 13 provides,
that "the fees mentioned in this act shall be chargeable
to the party, at whose instance the service is performed,"
with certain specified exceptions; but sheriff's fees for
levying upon, or keeping property, are not among the ex-
ceptions. Section 15 has the following provision: "But
any officer may demand his fees in advance for any par-
ticular service required to be performed by him; and
if such fees be not paid, or *secured to him,* the officer
may refuse to perform the service, until they are paid,
*or secured.* In such cases the fee bill shall state the
nature of the service, and that it is to be performed."
See also latter clause of section 21 of the same act.

There is no equity in the bill; and it was properly

1878
Special Term.

Mitchell, Sheriff
v.
Chancellor *et al.*

dismissed; and the decree of the court is therefore affirmed, with costs and $20.00 damages.

THE OTHER JUDGES CONCURRED.

DECREE AFFIRMED.