MILLER AND OTHERS v. WELLS.

1. Prior to the Act of 1825, (14th Feb ) deeds were not admissible in evidence, on the mere certificate of acknowledgment and registry, without proof of the execution of the deed.

2. The owner of a bond, who is unable to find the same after a diligent search in places where it would most probably be found, if at all in existence, is entitled to sue in chancery as on a *lost* instrument —and the subsequent finding of the bond will not divest the court of jurisdiction.

*Hayden* and *Napton* for appellants:

1. It will be insisted that the circuit court erred in not dismissing the bill for want of jurisdiction, there being no sufficient proof of the loss of the bond sued upon, which alone gives jurisdiction.

2. That the court should have decreed that the complainant be required to accept the deed of the defendants, they having shown title to the lots.

3. That the court erred in dismissing the bill against the administrator of Elias Rector, one of the co-obligors, and rendering a decree against the other co-obligors.

*R. W. Wells* for appellee:

On the part of the complainant it is insisted,

1. That the patent to "James Currin or his legal representatives, and to his or their heirs," is void for uncertainty as to the person of the grantee; that legal representatives here, are words of *purchase*, as is shown by what follows "their heirs;" that it is therefore like a deed to A B or C D, which is void—Jackson v. Carey, 8 John. R. 388; Hornback v. Westbrook, 9 John. R. 74; and Purkins, 56. The last authority is in point, and is entitled to great weight, as appears from Kent, 1 Kent's Com. 504.

2. If "legal representatives" are not words of *purchase*, then they are words of *limitation*, and are the same as "heirs," and would then be a deed to James Currin or his "heirs;" this would be void also. It would be to James Currin or his heirs, and to his or their heirs.

3. The patent having issued after the death of James Currin, is void—Collins v. Brannin and Tramell, 1 Mo. R. 541.

4. The deed from Currin in his lifetime to Fletcher, for the land in New Madrid, conveyed an equitable title to Fletcher to the land in Marion, which equitable title is now outstanding; and the deed from Currin's heirs could not convey it, and could only convey the legal title of Currin.

5. The deed from the widow and heirs of Currin, if

properly acknowledged, (which is admitted) yet conveys no dower, which is necessary to make the title complete —10 John. R. 266, Jones v. Gardner.

6. The Tax title is insufficient, because they have not shown that the provisions of the law have been complied with in regard to the sale, which is necessary—4 Whea. 77; 1 Mum. R. 428; 5 Whea. 116; 4 Mum. R. 431; 6 Whea. 119; 9 Cra. 64; 4 Cra. 403.

7. But the court would not compel a party to receive a title unless it could see that the title was clear and an indefeasible one; a doubtful or unmarketable title would not be received—Sug. on vend. 230, 309–10; 2 John. R. 614, Clute v. Robinson; Sug. vend. 235, 317; 10 John. R. 266, Jones v. Gardner. Here the State only makes a quit claim deed, and saves the rights of infants, married women, persons of unsound mind, and beyond seas. The taxes having been paid by any person would also defeat the title.

8. But it is insisted by complainant that even if the defendants had at the time of trial a good title, yet the court would not compel the complainant to receive it after a neglect of fourteen years on the part of defendants, especially where there was a request by complainant to make title, and no acquiescence on his part, and the delay on the part of defendants unaccounted for— which was so gross as to let what little title they had be sold for taxes—Rector v. Price, 1 Mo. R. 373; Benedict v. Linch, 1 John. C. R. 370; Sug. on ven. 264, 360, and cases there cited.

9. The complainant insists that the court ought not, on motion, to have dismissed the bill because of the title bond being found after the filing of the bill; because the bill expressly charged that the title bond was lost at the time of filing the bill, and whether it was or was not, was a matter of proof on trial.

10. The finding of the bond could not divest the court of jurisdiction, which was full and complete at the time of the commencement of the suit. But the court will proceed to decree.—Crawford v. Summers, 3 J. J. Marsh. Ky. R. 301, S. C. 1 Pirtle's Dig. 357, 314; 2 Pirt. Dig. 283, 205; Mollar v. Torrance, 9 Whea. 537; 5 Cond. R. 666; 10 John. R, 587, Rathburn v. Warren; 17 John R. 384, King v. Baldwin; 4 Bibb 553, Hopley's case; 2 Marsh. R. Ky. 230, Lindsay's heirs v. McCormack.

11. That if the bond was lost at the time of the commencement of the suit, and found before answer, if it would defeat the suit, it must be taken advantage of by

SEPT. TERM,
1837.

Miller & others
v.
Wells.

demurrer if it appear on record, or by plea—and that defendants cannot lie by for years, perhaps, and object at the trial after answer is filed—Unduhilt v. Van Carutand, 2 John. C. R. 339; Failey et al. v. Hinde et al. 1 Pet. R. 241; Graham v. Hackwith, 1 Marsh. Ky. R. 424; Exrs. of Brassier v. Van Courtland, 2 John. C. R. 242; Skinner v. Dayton, 5 John. C. R. 191 and 259; 2 Pirtle's Dig. 290, 251. It could not be set up in the answer.

12. The evidence fully supported the allegation in the bill of the loss of the title bond—four searches, proved to have been diligent searches, made at different periods, by persons having the legal custody of the papers—made where complainant had a right to believe that it was, and no right to search—and ten or eleven years elapsed without its being heared of—Harrison v. Robertson, 3 Mo. R. 449.

Opinion of McGirk, Judge.

Wells brought a bill in chancery against Miller et al., seeking to set up a bond given by Miller and others to Wells, which the complainant alleges was lost. The bill charges, that about the year 1819, the defendant, John Miller, Elias Rector, (since dead) and others, laid off a town, in the present county of Marion, called Wyaconda; that they had a sale of the lots in that year, and that the complainant became the purchaser; that to secure the purchase money to the defendant and others, the complainant gave his notes payable in six, twelve, and eighteen months, and afterwards paid the same to one of the said owners, to whom the others had assigned the same; that the said owners gave to the complainant their bond binding themselves to make a title when the purchase money was paid. The bill charges, that in 1821 or 1822, the complainant enclosed in a letter, written to said Rector, the bond for the purpose of enabling said Rector to see the numbers of the lots to which the complainant was entitled to a title, with a request to Rector to make the deeds according to the bond. But that Rector nor any one of the owners made to him the deed. The bill also charges that the bond was lost, and that diligent search had been made for the same, and it could not be found, whereby the complainant could not sue at law. As to some of the defendants, and Miller among them, answers were put in; as to others, the bill was taken as confessed; the bill was filed in 1831. The answers admit every thing in the bill charged, except the demand

for the deed and the loss of the bond. The bill charges also, that the defendants have not, nor ever had, any title to the lots purchased by complainant of them. The answers assert that the defendants had a title, and that they made and executed and tendered to the complainant a good and sufficient title to the lots in question, and that the complainant refused to accept the same. That the deeds tendered were made by John Miller before suit was brought; and farther, they say the bond was not lost, but was in the hands of Stephen Trigg, one of the defendants. Trigg put in his answer some two years after suit was brought, and states that he became *admr. de bonis non* of the effects of E. Rector, and being made a party, he examined the papers of Rector at the request of complainant, and could not find the bond, but that aftewards, at the request of complainant, and by his assistance, he made a further examination and found said bond.

On the hearing of the cause, the court made a decree against Miller, and dismissed the bill as to the administrator of Rector, on the ground that the administrator had no assets, &c.

The first error assigned is, that the court erred in excluding the evidence offered by the defendant, Miller, to show that he had title to the lots when he made a tender of title to Wells. The evidence on this point is, that the land, of which these town lots were a part, was holden by a New Madrid location, originally confirmed to one James Currin. That Currin made a deed of the land in New Madrid, after the earthquakes, to one Thomas Fletcher, with a power to locate the same for his use and benefit. This deed from Currin to Fletcher was given in evidence by the defendant, Miller; he then offered a deed from Fletcher and wife to Miller and others. This deed was objected to, because not proved; the court rejected the deed for want of proof. The deed is dated July 29, 1818. The deed was acknowledged before the clerk of the circuit court of St. Louis county, the 30th of July, 1818, certified under the hand and official seal of the clerk. The defendant then offered another deed from Fletcher and wife to Miller and others, for the land, dated October, 1820, the acknowledgment of which was taken before a justice of the county court of New Madrid county, on the 17th of Oct. 1822, which deed was recorded in Ralls county, where the land lay, and in June 5th, 1827, was recorded. There was no other proof of the due execution of the deed except the acknowl-

Prior to the Act of 1825 (14th Feb.) deeds were not admissible in evidence, on the mere certificate of acknowledgment and registry, without proof of the execution of the deed.

SEPT. TERM,
1837.

Miller & others
v.
Wells.

édgments and the registry, as before stated. The complainant, Wells, insists that these deeds were well rejected, because the law, as it stood at the trial of the cause, did not authorize these deeds to be read in evidence without proof of the handwriting of the makers. The act of 14th February, 1825, is the first act I have any knowledge of which authorizes a deed to be read in evidence on the certificate of acknowledgment. These deeds, however, were made before that period, and the acknowledgments are not according to the act; they, therefore, were rightly rejected. The defendant offered a deed from the heirs of Currin to them, dated after the date of the deed from Currin to Fletcher. This deed could have no effect, because the deed from Currin to Fletcher, already in evidence, shows Currin's heirs had nothing in the estate when they made their deed. According to this view of the matter, I cannot discover any error committed by the court below in rejecting the deeds.

The owner of a bond, who is unable to find the same after a diligent search in places where it would most probably be found, if at all in existence, is entitled to sue in chancery as on a *lost* instrument —and the subsequent finding of the bond will not divest the court of jurisdiction.

The next error assigned is, that the court erred in decreeing for the complainant on the evidence that his title bond was lost. The evidence on this is, that the bond was enclosed in a letter by the complainant to Rector, and that after the death of Rector, the complainant applied to William Rector, the executor of E. Rector, for a search among the papers of the deceased for the bond. That one Evans, who had the care of the papers, at two different times, by the direction of the executor, searched diligently, as he swears, among the papers for the bond, and could not find the same, and so informed the complainant. It is also in proof, that Trigg, after the suit was brought, made a search and could not find the paper, and, on the second search, and before his answer, found the same in a letter written by Wells to Rector. Evans made his search before the suit was brought. Now the question is, was the evidence of the loss of the paper at the time the suit was brought sufficient to entitle the complainant to go into chancery? I am of opinion the evidence was sufficient. The complainant applied *to the* person who had the lawful custody of the papers, and he swears he made two diligent searches and could not find the paper. It now seems that no one ever opened the letter of Wells to Rector; if this had been done, the paper would have been found. But it seems to me the inside of that letter was an unlikely place to look for the bond, and this is the reason why the thing was not done. It seems to me, that by the evidence, when Wells brought

his suit, he had made reasonable and even diligent inquiry, and could not know where the paper was, or whether in existence or not. The only remaining question is, whether the fact of finding the paper after suit commenced, was any reason why the same should be dismissed? I am of opinion it was not. First, the suit was rightly commenced, and no good could be accomplished by turning the party round at that time; and to this point, the complainant has cited several authorities, which satisfy me that the matter cannot be taken advantage of at all, or if it can, that it must be by plea, in the nature of a plea *puis darion con.* See 1 Mar. R. 241; 2 Pirtle's Dig. 290, 251, and several other authorities in complainant's brief on this point. I am of opinion that there is no reason to reverse the decree, and that the same ought to be affirmed.

Judges Tompkins and Edwards concur in this opinion.