# WHEELING.

LYTTLE AND SUTTON, GUARDIAN, v. COZAD et al.

Submitted January 25, 1881—Decided December 9, 1882.

(*SNYDER, JUDGE, Absent.)

1. A court of equity has jurisdiction to grant relief on a lost bond, but it generally requires an affidavit of the loss of the bond to accompany the bill. If the plaintiff fails to file such an affidavit, it may be supplied by filing it at any time before the hearing; and if this be done, the relief will be granted, if the proofs in the case establish the loss of the bond.

2. The relief will be granted in such a case, though it be proven, that

*Cause submitted before Judge S. took his seat upon the bench.

after the institution of the suit, but before the hearing of the case, the lost bond was found, provided the plaintiff had used diligence to find it before the suit was brought; and especially when the loss of it arose from its having been improperly in the possession of one of the obligors.

3. When a court of equity has jurisdiction of the case independently of the loss of the bond, no affidavit need be filed of its loss.

4. A bond of a special commissioner to make a sale in a chancery cause is delivered by the commissioner to the clerk of the court, and on its face it appears to be a complete and perfect bond, which was executed by the sureties upon the condition that it should not be delivered to the clerk, till it was also executed by another person as surety, and when the clerk received the bond he was not informed of any such condition or of its being in any way conditioned.   HELD :

This is a valid bond; and the sureties cannot set up as a defense, when sued on it, this condition.

5. It is not necessary to the validity of such a bond, that it should be either acknowledged or proven before the clerk.

6. Such a bond must, as to the sufficiency of the sureties, be approved by the clerk, but in order to make the bond valid, he need not endorse his approval upon it.   This approval is sufficiently shown by the fact, that the bond had been properly filed away by the clerk, and by the commissioner of sale proceeding to collect the money, which the giving of such bond authorized him to collect.

7. If a creditor agrees to give further time to his debtor on his giving a new bond with security, and he does give such new bond, but the name of the surety on it is a forgery, the creditor may sue the principal and his sureties at once on the old bond, and therefore they are not released by such an arrangement attempted to be made without his knowledge.

Appeal from and *supersedeas* to a decree of the circuit court of the county of Lewis, rendered on the 6th day of March, 1878, in a cause in said court then pending, wherein John S. Lyttle and John Sutton, guardian of William Sutton, were plaintiffs, and George Cozad and others were defendants, allowed upon the petition of said Cozad.

Hon. John Brannon, judge of the sixth judicial circuit, rendered the decree appealed from.

GREEN, JUDGE, furnishes the following statement of the case:

John S. Lyttle and John Sutton, guardian of William Sutton, instituted their suit in chancery in the circuit court of Lewis county, against George Cozad, Jonathan M. Bennett, John C. Jackson, Washington A. Bott, John C. Marsh and George Cozad, and at January rules 1874, filed their bill.   In it they allege, that in the suit in said court of *Nathan Reger* v. *John S. Lyttle et al.*, a decree was rendered May 9, 1870, directing a sale of one hundred and ten acres of land, the property of John S. Lyttle, and appointing George Cozad commissioner of sale; that on July 5, 1870, he sold said land and Washington A. Bott purchased it for one thousand three hundred and eighty-five dollars, and executed for the purchase-money three bonds, of four hundred and sixty-one dollars and sixty-six and two thirds cents each to said Cozad as commissioner, with said John C. Marsh his surety, dated July 5, 1870, payable in six, twelve and eighteen months after date with interest from date; that the sale was confirmed by the court the next day, and that the decree confirming said sale directed that the said George Cozad, commissioner, as soon as he should execute before the clerk of said court, to be filed with the papers of the cause, a bond with good security in the penalty of two thousand eight hundred dollars to be approved by said clerk and conditioned according to law, should withdraw said bonds and collect the same, and after allowing him thirty-six dollars and seventy cents as commissioner and the printer's fees of fifteen dollars, it further directed, that the balance, after paying the costs of suit and the amount due the plaintiff in said suit, Nathan Reger, should be paid to said John S. Lyttle, and ordered him to make a deed to the purchaser, W. A. Bott.   Copies of these decrees were filed with the bill.

On October 7, 1870, George Cozad with said Jonathan M. Bennett and John C. Jackson, his sureties, executed the bond required by said decree, which was approved and accepted by said clerk and was filed among the papers of said cause. The bill alleges the loss or destruction of said papers and bond.   A deed was executed by the commissioner to the purchaser filed with the bill, which recites the bonds executed to the commissioner; a lien being reserved for their payment.   The bill alleges, that the commissioner Cozad, did

withdraw and collect these bonds, and did pay the plaintiff, Roger, his debt and the costs of the suit as required by said decree, but after deducting his commissions, thirty-six dollars and seventy cents and said printer's costs, fifteen dollars, there still remained in his hands as commissioner a large amount, which by the said decree, he was directed to pay to John S. Lyttle, the plaintiff. Yet he never paid him any part of said balance, except ninety dollars which was paid February 20, 1872. The plaintiff, Lyttle, then states that this balance is, according to the amounts stated in the bill, about six hundred and thirty-one dollars as of the date of the sale, which has never been paid to him. The bill further states, that Jonathan M. Bennett claims that he signed and sealed said bond with the understanding and condition, that it should be binding on him only in the event one George Lawson should become a co-obligor therein; and the bond not having been signed by him, it was not completed and is therefore not binding on the said defendant. But the plaintiffs claim, that it was executed and was delivered to a public officer, the clerk, without such condition, and that it is binding on Bennett.

The plaintiffs also charge, that there was placed in the hands of Jonathan M. Bennett, by said George Cozad, or by others in his behalf, a sum of money amply sufficient to pay the full amount due to the said John S. Lyttle under said decree, which money was derived from the sale of property owned by said Cozad and was placed in the hands of said Bennett for the express purpose of paying off the money so decreed to be paid to said Lyttle; and that this money is yet in the hands of said Bennett, and the plaintiffs claim, that this is a trust fund in the hands of said Bennett, which this Court should order to be applied to the payment of said debt due the plaintiff John S. Lyttle.

The obligors in the said bonds given for the sale of said land, Bott and his surety Marsh, are made defendants because if the court should hold as claimed by Bennett, that the official bond given by said Commissioner Cozad is invalid, then the payment of said bonds to him was unauthorized. And the plaintiffs claim they are still liable on these bonds as well as the land on this vendor's lien. The plaintiff John L. Lyttle,

the bill states, has assigned his right to said money to this co-plaintiff John Sutton, as guardian of William Sutton. The bill prays a decree against these sureties, Bennett and Jackson, on their official bond of Commissioner Cozad; or if this bond be not binding, then that the tract of land bought by said Bott he declared liable for said claim and be subjected to pay the same, and, that said Bott and his surety Marsh, be held personally liable therefor; that said bond in the hands of Bennett may be acted upon and applied and disposed of according to equity; that the plaintiffs' rights may be settled and the liabilities fixed between all parties, and that all parties may have relief according to equity. And the bill further prays for general relief.

John M. Bennett filed his answer, in which he admits the facts stated in the bill in reference to the proceedings in said suit of *Reger* v. *Lyttle*, but denies that he executed a bond, as security of said commissioner, and as co-security with John C. Jackson for the faithful performance of his duties, by said Cozad commissioner. He says this bond was brought to his office in Weston, by George Cozad, who told him that George Lawson and John C. Jackson would sign it, and Bennett signed his name with the understanding and agreement, that when Lawson came to town and signed it, that the securities would acknowledge the bond before the clerk at his office. Lawson did not execute the bond and Bennett insists that it is not binding upon him. He believes, that when he signed the bond it was entirely blank.

The answer alleges, that he Bennett, and not Cozad, paid Reger his money. He paid it, because he had in the first instance received this claim of Reger to collect as his counsel. He insists, that Cozad paid to the plaintiff, John S. Lyttle, the entire balance of his claim and took his receipt therefor, and afterwards Cozad borrowed said balance, amounting to about three hundred and fifty dollars of him and gave him his note therefor, bearing ten per cent. interest, with John C. Jackson as his surety, which note by the assignment of the plaintiff Lyttle, the co-plaintiff Sutton now has. He denies, that either Cozad or any person for him ever placed any money in his hands to pay on this decree, and, that he has no such money in his hands, for the decree was regarded

as having been entirely satisfied. He says, that he bought of George Cozad's wife one hundred and eleven acres of land in Upshur county, for which he paid two hundred and fifty dollars in cash, and that three hundred and fifty dollars remained in his hands, of the purchase-money, to pay off said note given by Cozad and Jackson to Lyttle, for the three hundred and fifty dollars borrowed, which was to be done when the note was delivered to Cozad and his wife, but not otherwise. This money was her sole and separate property arising from the sale of her land inherited by her from her father, and if this note was not delivered to Cozad or his wife, then this balance of the purchase-money was to be paid to her, and she being now dead, it now belongs to her children, who must be made parties, before the court can assume jurisdiction over this money. He also denies, that the papers were lost, and as no affidavit of loss has been filed with the bill, no jurisdiction can attach on that account; he insists that the jurisdiction in this case does not belong to a court of equity, but to a common law court, and on this ground he demurrs to the bill. This answer was filed March, 1874.

John C. Jackson, at the same time filed his answer. He says, that he signed this bond subsequently to Bennett, and without any idea that any sort of conditions were attached to it when he signed it. He says, that the papers in this cause of *Reger* v. *Lyttle,* were found in the office of Cozad some time after the institution of this suit; that this one hundred and eleven acres of land in Upshur county, named in his answer, were sold to Bennett by Cozad and his wife, and six hundred dollars of the purchase-money was left in Bennett's hands to pay the plaintiffs' debts and, that it should be so applied; that his, Jackson's name, was forged by Cozad to the bond of three hundred and fifty dollars given to Sutton, and being indicted therefor, he has fled the State, and said bond is now in the hands of the commonwealth's attorney as evidence, and cannot be delivered up to Cozad or his wife; that the condition on which this three hundred and fifty dollars was to be paid over by Bennett should be considered void. He insists, that as this money is in Bennett's hands, he is liable therefor as principal; and if there was a sufficient

amount in his hands to pay the whole of the plaintiffs' demand, that he should be decreed to pay all the costs of this suit.   On September 8, 1874, the plaintiffs' attorney made and filed an affidavit of the loss of this bond, signed by the commissioner of sale, as set out in the bill.   A number of depositions were taken, which prove that this bond, which is in the usual form of bonds given by commissioners of sale, was prepared by the deputy clerk and handed to George Cozad, the commissioner of sale, to have executed.   Bennett testifies, that when Cozad brought the bond to his office in Weston, the names of the obligors were not inserted in the bond, and that Cozad asked him to sign it.   He did so with the understanding, that John C. Jackson and George Lawson should sign it, and as soon as George Lawson came to town all the parties would acknowledge it before the clerk of the court.   He alleges, that Cozad's name was not then signed to the bond.   John C. Jackson states, that he thinks that Bennet's name was signed to this bond when he, Jackson, signed it.   He never heard of Bennett's signature being put to this bond on any conditions of any sort, until after Cozad left this county some eighteen months after this bond was given.

The clerk states, that the deputy clerk to whom this bond was returned by Cozad signed at first only with the names ot Cozad and Bennett, presented this bond to him and he objected to it, unless the name of another responsible party was signed to it.   He afterwards presented the bond with the name of Bennett also signed to it, and he was then satisfied with it and directed it to be filed with the papers of the suit, which was done.

The bond is dated October 7, 1870, and was signed and sealed by the parties.   The order of the signatures are first, George Cozad, John C. Jackson and lastly, J. M. Bennett. This would seem to indicate, that the clerk's recollection that the bond was signed by Cozad and Jackson before it was presented to or signed by Bennett, was correct.   The clerk also states, that he was admonished by the judge to take good security on this bond, and that he went to Bennett's office to see if the bond was all right, but he was not in.   Afterwards Bennett came to his office, and he asked

him if it was all right, and that Bennett assented to its being right by a grunt. The clerk did not show the bond then, and nothing was said about its having been signed conditionally by Bennett, or about any expectation on his part that it would be signed by George Lawson. Nor did Cozad or any one else speak of any expectation, that George Lawson or any other person was to sign this bond.

The deputy clerk testifies to the same effect and states further, that he never heard that Bennett claimed to have signed the bond with any qualification or condition till after this suit was brought. It was proven, that the papers in the suit of *Reger* v. *Lyttle*, in which this bond was filed, were absent from the clerk's office for a long time before this suit was brought and could not be found, though diligently searched for. Some time after the institution of this suit they were found in the office of Cozad, who had left the country some two years before.

Bennett states in his deposition, that a prior bond had been given by Cozad, which was deemed insufficient by reason of misrecital. But in this he is not confirmed by the clerk, who has no recollection of any other bond having been drawn in this case; nor does the deputy clerk speak of any other bond. They would be more likely to recollect correctly, whether such other bond was ever drawn. Bott, the purchaser of the land states, that he paid to Cozad, the commissioner, the whole of the purchase-money for the land he bought, amounting to one thousand three hundred and eighty-five dollars, which was divided into three payments of four hundred and sixty-one dollars and sixty-six and two third cents each; and that he "paid off the first payment before it was due, and the other two as they fell due; he thought, but was not certain, that the first note was paid shortly after it was given."

These notes the record shows were all dated the 5th day of July, 1870, and were payable in six, twelve and eighteen months from date, with interest from date, though the decree ordering the sale did not direct, that the deferred payments should bear interest from their date, but only that the sale should be on a credit of six, twelve and eighteen months. The first note fell due January 5, 1871, and the commissioner's

bond was executed on October 7, 1870. John Sutton, the assignee of John S. Lyttle's claim, was paid two hundred and ten dollars on January 10, 1872, and on the 20th of February, 1872, he was paid by check ninety dollars more, making in all three hundred dollars. After these payments there was still due him three hundred and fifty-six dollars, and he says, that Cozad told him he could not raise it, but if he Sutton, would loan it to him he would pay him ten per cent. per annum and give him the best security, and said that when J. M. Jackson returned from Baltimore he would get him to sign his bond as security for that amount to Sutton, and send it to him by mail, and he did receive by mail a note purporting to be signed by Cozad and Jackson, but it turned out Jackson's name was forged, he testifying in this case that Cozad was indebted for this property and left the country in the spring of 1872, and this forged note was placed as evidence against him in the hands of the commonwealth's attorney, who will not give it up.

Bennett in his deposition states, that after he left here January 1, 1872, he purchased from Cozad's wife, Columbia Cozad, one hundred and eleven acres of land in Upshur county, West Virginia, and out of the purchase-money retained three hundred and fifty dollars to pay this note claimed to be forged, when the same should be delivered to her. He also asserts, that this land was her sole and separate property. As the note could not be delivered up, he was not authorized to pay the amount of it and never did.

The circuit court on July 27, 1875, on this pleading and evidence, expressed the opinion, "that the bond mentioned in the bill executed by George Cozad, special commissioner, with John M. Bennett and John C. Jackson as his securities, is valid and binding both as against said Cozad and said Bennett and Jackson as securities;" and referred the cause to a commissioner to ascertain and report, what balance remains due to the plaintiff out of the proceeds of the sale of the land in the case of *Nathan Reger* v. *John S. Lyttle et als.;* whether any other bond than this mentioned in the bill was executed by George Cozad as commissioner, and if so, when it was executed and who were the obligors in it; and whether any of the purchase-money of said land, was recovered by

George Cozad before the execution of the bond in the bill mentioned, and if so, what amount.

On January 27, 1877, the commissioner made his report, in which he charges all the purchase-money bonds for this land as bearing interest from that date, July 5, 1870, and deducting the debt paid Reger and all costs of suit, he shows a balance in the hands of Cozad, commissioner, as due to the plaintiff of five hundred and sixty-seven dollars and ninety-nine cents as of January 25, 1877. He further, reports, that he has been unable to ascertain that any other bond than that mentioned in the bill was ever executed by George Cozad, as commissioner, and it does not appear from any-thing before him, whether or not the first purchase-money bond of Washington A. Bott was paid before or after the execution of the commissioner's bond named in the bill dated October 7, 1870. The other two bonds were paid afterwards.

The commissioner then makes a special statement, at the instance of Wm. Bennett, based on the assumption, that this first purchase-money bond was paid before October 7, 1870, and therefore could not be charged against the sureties of Cozad. According to this statement, if we assume that the bonds did not bear interest from their date, as they professed to do, because the decree directed the sale of the land simply on a credit of six, twelve and eighteen months without say-ing, that the purchase-money should bear interest from the day of sale, the amount paid out by Cozad, excluding this first bond, would exceed the amount he had received by one hundred and thirty-three dollars and eighty-six cents as of January 25, 1877. Or if we charge interest on these bonds from their date, the amount Cozad had received would ex-ceed the amount he had paid him by sixty-four dollars and thirty cents; the first purchase-money bond not being charged. He also has a statement showing how the liability between himself and his co-security would be, if the plain-tiff's claim was three hundred and fifty-six dollars; and he makes it out that Bennett would have to pay forty-eight dol-lars and one cent, and J. C. Jackson three hundred and seven dollars and ninety-eight cents. This special statement is excepted to by the plaintiff's counsel on the points, in

which it differs from the commissioner's statements, specifying them.

In the mean time Mrs. Columbia Cozad died, and her estate was committed to J. G. Vandervoot, sheriff of Lewis county. She left two infant children, Susan and Minnie Cozad, and in August, 1877, the plaintiff filed an amended bill repeating his allegations made in his original bill in reference to the fund left in Bennett's hands to pay the plaintiff's claims; and alleging, that Columbia Cozad was the owner in fee of the one hundred and eleven acres of land bought of her and her husband by J. M. Bennett; that she married prior to April 1, 1869, and thereby her husband, George Cozad, became entitled to an estate for life in said tract of land; that of this purchase-money that J. M. Bennett owed for the purchase of this land of Cozad and wife, he retained three hundred and fifty dollars in his hands to pay the claim of the plaintiffs; that by this sale the character of this property was changed from realty to personalty, and the cash payment of two hundred and fifty dollars was paid to Cozad's wife and, that she consented and directed that the residue of the purchase-money amounting to three hundred and fifty dollars, should be left in Bennett's hands to be paid on the plaintiff's claim in order to relieve him from his distress and trouble, not only because of owing this debt, but, also because of the criminal prosecution against him which had grown out of it.

In the amended bill it is stated, that this sale was made for that express purpose; that this change in the character of this property gave to George Cozad the right to this three hundred and fifty dollars as personalty, and it is held in trust by Bennett to pay the plaintiff's demand; that the condition spoken of by Bennett of the delivering up of this note claimed to be forged, was really no condition but a mere request, and if it were otherwise such a condition is void. The administrator and the children of Columbia Cozad are made, with the other defendants to the original bill, defendants in this amended bill, and general relief is asked.

The answer of the infants by their guardian *ad litem* was filed, and Cozad and Bennett filed a joint answer. This answer claimed, that this one hundred and eleven acres of

land was the sole and separate property of Columbia Cozad, but does not deny that she was the owner of it at the time of her marriage, nor that it was not prior to April 1, 1869. It is silent, as to how she was the owner of this land to her sole and separate use, and makes no denial of the allegations of facts, which, it is claimed, show, that she was not the owner of this land to her sole and separate use, unless the denial at the close of the answer could be so construed, which is, that the defendants deny every allegation in the bill inconsistent with this answer and admit all those consistent with it. They claim, that this money of Columbia Cozad not being available for the relief of her husband now remains in Bennett's hands as the property of her children and heirs.

On March 6, 1878, this cause was heard on these pleadings and proofs, the replications to the answer, the depositions and report of the commissioner and the record in the case of *Nathan Reger* v. *John S. Lyttle et als.*, including the bond in said cause referred to in the bill in this cause; and the court confirmed the report of the commissioner, and the plaintiff's exceptions to the commissioner's special statement, made for Bennett, were sustained. And it was decreed that George Cozad, J. M. Bennett and John C. Jackson, do pay to John Sutton, guardian of William Sutton, the sum of five hundred and ninety-seven dollars and fifty-nine cents, with interest from March 6, 1878, being the amount found due by said commissioner's report, and the costs of this suit for the collection of which said Sutton may sue out execution. No decree was rendered touching the payments made by Bennett to Reger, proved by his deposition, as between him and his co-security Jackson, as there may be a fund in said Bennett's hands arising from the sale of Mrs. Cozad's land, in which George Cozad may have a life estate. By the decree all the rights and equities between Bennett and Jackson are reserved to them. From this decree J. M. Bennett obtained an appeal and *supersedeas* to this Court.

*J. M. Bennett*, counsel for appellant, cites the following authorities: 1 Story Eq. 104; Code 617, 747; 7 Pet. 448; 5 Pet. 373; 1 How. 250; 17 How. 437; 2 McL. 405; 18 Gratt. 801; 16 Wall. 1; 2 McL. 74; *Id.* 99; 3 McL. 376;

4 McL. 496; 4 Cr. C. C. 293; 5 Cr. C. C. 123; Adams Eq. 439, 447; 2 Call. 537; 2 Rand. 449; 2 Leigh 490; 7 Leigh 402; 9 Cr. C. C. 212; 5 Gratt. 384; 2 Rob. Pr. 132, 141; 3 Call. 74.

*Henry Brannon*, for appellees, cited the following authorities: 18 Gratt. 801; 12 Leigh 479; 27 Gratt. 403; 4 W. Va. 45; 6 W. Va. 123; 24 Gratt. 202; 16 Wall. 1; 21 Am. Rep. 440–463; Big. Estopp. 437; *Id.* 452, 453, note 1; *Id.* 487, note 1; *Id.* 489; 27 Gratt. 608; 3 Gratt. 138; 2 Tucker s p. 483; 2 Rand. 323; 17 How. 437; 11 W. Va. 386; 12 W. Va. 226; 6 Munf. 202; 7 Leigh 128.

GREEN, JUDGE, announced the opinion of the Court:

The first question presented by this record is, whether the circuit court ought not to have dismissed the bill, because of the want of jurisdiction on the part of a court of equity in the case; there being no affidavit accompanying the bill, of the loss of the bond of the commissioner of sale, which bond the plaintiffs sought in this suit to enforce. The bill was not verified by affidavit, nor was any affidavit filed with the bill of the fact of the bond having been lost. The bill was filed at January rules, 1874. On March 5, 1874, J. M. Bennett filed his answer, in which he insists, that the plaintiffs' remedy is at law, and objected to the jurisdiction of a court of equity in the case, because no affidavit was filed with bill of loss of this bond. On September 8, 1874, the plaintiffs' attorney filed his affidavit stating, that this bond was lost when this suit was instituted, and could not then be found on diligent search, though it was found some time afterwards where it had been improperly placed by one of the obligors in the bond. The first hearing of the case did not take place till July 25, 1875. The truth of this affidavit having been fully proven in the meantime, by depositions, and the court then decided, that this bond was valid and referred the cause to a commissioner, thus assuming jurisdiction of the case. Did the court err in this?

Courts of equity have always taken jurisdiction to enforce a bond, which has been lost. Originally this jurisdiction was assumed, because the common law courts furnished no

redress in such a case, as they required in a declaration on a bond *profert* of the bond, and no excuse in the declaration was regarded as sufficient to dispense with such *profert.* See *Whitefield* v. *Fausset,* 1 Ves. 392; *East India Company* v. *Boddam,* 9 Ves. 466. This rule of the common law was afterwards changed, and these courts assumed jurisdiction of suits on lost bonds. The allegation in the declaration, that the bond was lost being held to dispense with the *profert* of it. See *Read* v. *Brookman,* 3 T. R. 151; *Totty* v. *Nesbitt,* 3 T. R. 153 note. Yet, this assumption of jurisdiction by the common law courts was held by courts of equity, in accordance with a general principle applicable generally to all cases of extension of jurisdiction by the common law courts, that they still continued to have jurisdiction to furnish redress upon lost bonds. See *Walmsley* v. *Child,* 1 Ves. 341; *Kemp* v. *Pryor,* 7 Ves. 249; *Evans* v. *Bicknell,* 6 Ves. 182; *Mayne* v. *Griswold,* 3 Sandf. S. C. 478; *Hickman* v. *Painter,* 11 W. Va. 386; *Mitchell* v. *Chancellor,* 14 W. Va. 22.

In such cases, courts of equity required an affidavit to accompany the bill, when the party sought relief in the court of equity and not simply discovery, that the bond was lost and the plaintiff at the hearing had to establish satisfactorily such loss. For it was the foundation on which the court assumed jurisdiction. See *East India Company* v. *Boddam,* 9 Ves. 466; *Stokoe* v. *Robson,* 3 Ves. & B. 50. But these rules have been somewhat relaxed in this country. Thus in *Graham* v. *Hackwith,* 1 A. K. Marshall (Ky.) 424 it was held, that the affidavit might be dispensed with if the loss be clearly shown. This case however does not show, that objection to the jurisdiction of the court was made in the answer. It is silent on this point, being very imperfectly reported.

In the case of *Cabell's Ex'ors* v. *Megginson's Adm'r,* 6 Munf. 202, there was no affidavit of the loss of the bond, but the jurisdiction of the court was sustained, and in that case the court below dismissed the bill for want of jurisdiction and the court of appeals reversed the decision, though the record failed to show, that any objection was made in the court below to the jurisdiction of the court for want of such affidavit.

In the case of *Thornton* v. *Stewart*, 7 Leigh 128, the bill stated, that the bond was lost but there was no affidavit of its loss accompanying the bill, nor was the bill sworn to. The answer made no objection to the jurisdiction of the court on that account. Many years after, but before the hearing, an affidavit of the loss of the bond before the institution of the suit was filed, and the court below decreed in favor of the plaintiff on the lost bond. The appellate court was of opinion, that the plaintiff, on the pleadings and proof then in the case, was not entitled to a decree and remanded the cause for further proceedings. Judge Tucker in delivering the opinion of the court says: "I do not concur in the objection to the assumption of jurisdiction, being satisfied with the affidavit as to the loss of the bond; for though it was not filed with the bill, it is one of those defects, which I think, may well be supplied in the progress of the cause, when there has been no demurrer to the bill for want of it."

It seems to me, that this decision was right and even if there had been a demurrer to the bill, on well established principles, the court ought not to have dismissed the suit without giving the plaintiff leave to amend his bill and accompany the amended bill with an affidavit, that the bond was lost when the suit was instituted. The failure therefore, of the plaintiffs in this case, to accompany their bill with an affidavit of the loss of the bond, was a defect cured by the filing of such affidavit and by the proof of the loss before the first hearing of the cause. But, when the cause was first heard, the lost bond had been found; this however would not defeat the jurisdiction of the court. See *Crawford* v. *Summers*, 3 J. J. Marshall (Ky.) 300; *Miller* v. *Wells*, 5 Mo. 6.

In this case a court of equity had jurisdiction of the case stated in the bill, even had there been no allegation of the loss of the bond; for one of the objects of the suit was, according to the bill, to determine whether the defendant, Jonathan M. Bennett, did not have on his hands a trust-fund left with him to be applied to the payment of the plaintiff's demand. A court of equity alone had jurisdiction of such matter, and could alone inquire into the question, whether there was or was not such trust; and if it found that there

was, to direct the funds in Bennett's hands to be applied to the plaintiff's demand.

No affidavit of the loss of a bond is required, where the case stated in the bill would give a court of equity jurisdiction, independently of the loss of the bond. Such affidavit is only required, where if the bond had not been lost, the only remedy of the party would have been at law and not in chancery. *Purviance et al.* v. *Holt*, 3 Gilmar, Rep. (Ill.) p. 404. So too, the bill sought to make the land bought by the purchaser, W. A. Bott, liable for the plaintiff's demand, if the commissioner's bond was, as claimed, invalid. A vendor's lien had been retained on the land for the purchase-money, and it was unpaid if this commissioner's bond was invalid, as the commissioner would, in that case, have had no authority to collect the purchase-money. This object of the bill could only be carried out by a court of equity, and therefore if the commissioner's bond had not been lost, a court of equity in this case would have had jurisdiction.

The next enquiry is, was the circuit court right in holding this commissioner's bond valid as against Jonathan M. Bennett. He proved, that he signed it with the understanding and agreement that Lawson and Jackson, were also to sign it as securities for Cozad, and it never was signed by Lawson. The bond on its face, when delivered to the clerk, was perfect and he says when first presented to him it was signed only by Cozard, the principal, and Jackson as security, and he would not approve it unless another good name was added as surety; and, that subsequently, Bennett signed it, and when again presented he approved it. This statement is apparently sustained by the appearance of the bond, J. M. Bennett's name being the third and last signature in order, though of course it is possible that the other names were signed afterwards, but above his signature; and Jackson thinks he did sign his name after Bennett's, though he signed it above in a place, which had been left for his signature. These statements, are of course, irreconcilable with the clerk's statement, that when he first saw this bond Cozard's and Jackson's names were on it, but not Bennett's. But, assuming the statement of Bennett to be according to the real facts, would it render the bond invalid as to him?

In *Nash* v. *Fugate et al.*, 24 Gratt. 202, it was decided, that "a bond which is a complete and perfect instrument on its face at the time of its delivery to the obligee, was executed by persons as securities upon the condition, that it should not be delivered until executed by other persons, and it was placed in the hands of the principal obligor, and without being so executed it was delivered by the obligor to the obligee, who was not informed of the condition. The bond is the valid bond of the securities and they cannot set up the condition against the obligee." This conclusion is sustained by the great weight of authorties, and I think by reason.

The reason of this is, that the sureties having in such a case willfully caused the obligee to believe, that they were willing to become sureties on the bond in the form and with the names on it, which were there when it was delivered to the obligee; and thereby he was induced to accept such bond, and thus change his previous position, the sureties must thereby be concluded against the obligee from averring, that they were not then willing to sign the bond as the sole sureties in the form in which by their connivance and fault it had been presented to the obligee.

When one of two innocent persons must suffer by the act of a third, he who has enabled such person to occasion the loss must sustain it. The sureties by entrusting the bond to the principal in such a case make him their agent to deliver the bond to the obligee, for this is the ordinary mode of conducting such transactions. And having given the principal instructions, that he must get other securities on the bond before he delivers it to the obligee, they by giving the bond in a perfect form trust him to carry out such instructions; and if he fails to do so but delivers the bond to the obligee in such perfect form, it must be obligatory on them, for it is their fault, that injury has resulted; and the loss thus resulting they cannot shift to the obligee by proving such private instructions given by them to the principal obligor, except where the obligee is guilty either of fraud or rashness in accepting such bond.

The following are some of the authorities, which sustain this position : *Smith* v. *Moberly*, 10 B. Mon. 266; *Millett* v. *Parker*, 2 Met. (Ky.) 608; *Deardorff et als.* v. *Foresman*, 24

Ind. 481; *State* v. *Pepper*, 31 Ind. 76; *Passumpsic Bank* v. *Goss*, 31 Vt. 318; *State* v. *Peck*, 53 Maine 284; *State* v. *Potter*, 63 Mo. 212; and *Dair* v. *United States*, 16 Wallace R. 1.

It is true there are cases, which are perhaps not in perfect accordance with these views; among them are *The People* v. *Bostwick*, 32 N. Y. R. 445, and *State Bank* v. *Evans*, 3 J. S. Green 155. There are also older cases in Virginia, in which the court held, that when an instrument was incomplete on its face and indicated that others were intended to sign it, it was not binding on those who did sign it, although the condition may not have been known to the obligee when it was delivered to him. See *Ward et al.* v. *Churn*, 18 Gratt. 801, and *Preston* v. *Hull*, 23 Gratt. 600.

In the case of *Miller* v. *Fletcher et al.*, 27 Gratt. 405, the court seemed to have gone still further in holding a bond valid. In that case it was decided, that "if a bond, perfect on its face, is delivered to the obligee as an escrow, to be valid on another person executing it, it is valid though the condition is not complied with." In this case Judge Staples reviews a number of cases as sustaining the position, that a deed or bond cannot be delivered to the obligee as escrow, and if it be, the condition will be regarded as invalid and the deed or bond as absolute.

These cases are *Simonton's Case*, 4 Watts 180; *Duncan et al.* v. *Pope*, 47 Ga. 445; *Cinn., W. & Z. R. R. Co.*, v. *Iliffe*, 13 Ohio St. 235; *Ward* v. *Lewis*, 4 Pick. R. 518; *Currie* v. *Donald*, 2 Wash. 58; 2 Lom. Dig. 38; 3 Wash. on Real Property 268. And he also cites numerous cases, which he asserts sustain the same position. See *Brackett* v. *Barney*, 28 N. Y. 333; *Worrall* v. *Munn*, 1 Seld. 238; *Jackson* v. *Catlin*, 2 Johns. 256; *Black* v. *Shreve*, 13 N. J. Eq. R. 456; *Herdman* v. *Bratten*, 2 Har. (Del.) 396; *Mad. & Ind. Plank Road Company* v. *Stevens*, 10 Ind. R. 1; *Brown* v. *Reynolds*, 5 Sn. [Tenn.] 639; *Gibson* v. *Partele*, 2 Dev. & Bat. R. 530; *Haygood* v. *Harley*, 8 Rich. Law R. 325; *Graves* v. *Tucker*, 10 Smeedes & M. (Miss.) 9; *Fireman's Insurance Company* v. *McMillan*, 29 Ala. 147, 161; Shepherds' Touchstone, vol. 1 p. 58, 59; *Hicks* v. *Goode*, 12 Leigh 479, 490; *Ward* v. *Churn*, 18 Gratt. 801.

In opposition to these views, Judge Staples finds no deci-

sion except perhaps, *Hudson* v. *Revett*, 15 Eng. C. L. R. 467 and *Johnson et al.* v. *Baker*, 4 Barn. & Ald. 440, which he comments on.   He concludes, that " A doctrine sustained by such an array of authorities, a doctrine which has survived all the changes and innovations of modern reform, must have something to commend it to the approbation of the courts beyond its mere antiquity.   It is not to be overturned by denunciation."   He then proceeds to show the arguments, on which it is based.   See 27 Gratt. pp. 412, 413.

But nevertheless, these views cannot perhaps be easily reconciled, if at all, with the decisions in *Stuart* v. *Livesay*, 4 W. Va. p. 45 and *Newlin* v. *Beard et al.*, 6 W. Va. 110. It is not however necessary for us to determine in this case, whether the law as laid down in *Miller* v. *Fletcher*, 27 Gratt. 403 is or is not sound law.   There is nothing in the two West Virginia cases, which conflict with the law as laid down in *Nash* v. *Fugate*, 24 Gratt. 202 as above quoted. And for the reasons we have stated, we regard it as well sustained both by reason and authority.   Admitting this as good law it is obvious, that the commissioner's bond in this case must be held valid against all the obligors in it.   The handing of it to the clerk was its delivery.   It was beyond controversy, that it was then a complete and perfect instrument on its face, and it is valid against all the obligors including J. M. Bennett, though it was executed by him upon the condition, that it should not be delivered until executed by Lawson.   There is no question but that, when it was delivered to the clerk, he was not informed of any condition and the first time he saw Bennett, he asked him in the clerk's office, whether it was all right and he was understood by the clerk to assent to its being all right; certain it is, that he did not say there was anything wrong about it, nor did he ask to examine it to see if it was signed by Lawson, though he says it was understood, that he and Lawson were to acknowledge it in the clerk's office at the same time.   He had thus good reason to believe, that it had not been executed by Lawson and yet, he made no objection to it when asked if it was all right.

There can be no question, on the authorities we have cited, that this bond is valid against him unless it be a bond, which

the law requires to be signed in the clerk's office in the presence of the clerk, as is claimed by the appellant in this case.

Section 1 of chapter 132, Code of West Virginia, p. 629, provides, that "no special commissioner appointed by a court to make a sale of property, should receive money under such decree until he gives bond before the said court or its clerk." And section 1 of chapter 10 of Code of West Virginia, p. 79, (Acts of 1872–1873, chapter 42, section 1), provides, that "every bond required by law to be taken, or approved by, or given before any court, board or officer, shall unless otherwise provided, be made payable to the State of West Virginia, with one or more securities deemed sufficient by such court, board or other officer, and be proved or acknowledged before such court, board or officer."

Now this section 1, last quoted, applies to two very different kinds of bonds. It applies to bonds of permanent public officers, such as clerks, sheriffs, State officers and other public officers, whose bonds are required to be filed in the particular offices named in the statutes. All such official bonds by section 20 of chapter 10 of Code of West Virginia, and section 17 chapter 42 of Acts of 1872–1873, are required to be reorded in a well bound book. This section 1 of chapter 10 of Code of West Virginia, applies also to a very different class of bonds such as injunction-bonds, appeal-bonds, &c., which are private bonds but are required to be taken before some public officer, and are not required to be filed in a public office nor required to be recorded.

To this second class really belongs the bonds executed by commissioner of sale appointed by chancery courts. These bonds, which taken before the clerk of the court and those included in this first section, chapter 10 of the Code of West Virginia, are not required to be filed in any public office and are not included in section 20 of chapter 40 of the Code and are therefore not to be recorded. Now section 2 of chapter 73 of Code of West Virginia, p. 469 provides, that "where any writing is to be recorded, the recorder, now clerk, shall admit the same to record in his office as to any person whose name is signed thereto, when it shall be acknowledged by him or proved by two witnesses as to him, before such recorder, now clerk." And the 5th section pro-

vides, that such writing shall also be admitted to record, when proven by certain acknowledgments certified to by certain officers, the forms of such acknowledgments for recordation being given.

When therefore a bond is required to be taken before any clerk or officer, and it is a bond, which this statute law requires to be recorded, there must be such an acknowledgment or proof before such clerk or officer, of the execution of the writing, and it must be formally certified on the bond in order to comply with these recording statutes. Otherwise it could not be recorded.

Therefore when the first section of chapter 10 of Code of West Virginia p. 79 speakes of a bond required by law to be taken or approved by, or given before any officer and directs, that it shall have the sureties approved as sufficient by such officer and further directs, that such bond is to be proved or acknowledged before such officer, this language must be construed with reference to the objects with which such proof or acknowledgment is required. If it be an official bond required to be recorded, there must be it seems to me, a preservation by endorsement on the bond of the proof or acknowledgment of it, that such proof or acknowledgment may be recorded with the bond. But if the bond be a private bond or one not required to be recorded, as for instance, the bond of a special commissioner of sale appointed by a chancery court in a particular suit, then there seems to be no such necessity for the formal endorsement on the bond of the acknowledgment of it by the obligors, or of the proof of their signatures, as it is not to be recorded and therefore an attested copy of it cannot be received in evidence in the courts as the original. In such case, such acknowledgment or proof is required it seems to me, for the protection of the officer, who is required to approve the bond, and he need make no endorsement of such acknowledgment or proof on the bond; as it would in no manner protect or serve any purpose, so far as third persons interested in the bond are concerned, where it is not to be recorded. As it seems therefore, that when the bond is in the nature of a private bond and is not required to be recorded, the acknowledgment or proof of it before the clerk or other officer, is only required

for his protection and justification in accepting and approving such bond. He waives his right to require such proof or acknowledgment, if he be satisfied, that the signatures are genuine, and if he fails to require any formal proof or acknowledgment of such signature; but his failure to do so would not vitiate the bond. For in such case no endorsement of such proof or acknowledgment is required, and therefore no evidence of it is preserved. It seems to me clear, that the obligors cannot, if they really signed the bond, object to its validity because they did not formally acknowledge it. Had they done so no record of their formal acknowledgment would have been kept. And therefore it seems to me, that the validity of the bond cannot depend upon such an acknowledgment. If it did the statute law would have required the written evidence of such acknowledgment to have been officially endorsed on the bond so that all would know that it was or was not valid.

My conclusion is, that the bond of a commissioner of sale, appointed by a chancery court will be valid, though it was neither executed in the clerk's office before the clerk nor proven before him provided, that the clerk accepted the bond officially and approved of the sufficiency of the sureties on such bond. It is certainly however, a very careless thing in a clerk to accept such a bond without its being acknowledged or proven before him. For if it should turn out, that the signatures were forgeries or for any reason the bond was not binding on the sureties, doubtless the clerk and his securities would become responsible for any loss sustained by any one, because of such carelessness of the clerk. He is authorized for his own protection to take such acknowledgment or proof, and he ought as a prudent person to endorse the fact of such acknowledgment on the bond. It would also be, in most cases, prudent to endorse on the bond, that the sureties had made oath to their sufficiency as such sureties. But the failure of the clerk to do these things, which he has a right to do for his own protection, in no manner affects the validity of the bond.

We regard therefore the provision in section 1 of chapter 10 of Code of West Virginia, p. 79, which provides, that

every bond required by law to be given before the clerk of a
circuit court in cases, in which the bond is not required to be
recorded, is mandatory so far and so far only as it requires
such bond to be executed with one or more sureties deemed
sufficient by such clerk, and therefore that the bond of a
special commissioner of sale need not, in order to be valid, be
either acknowledged or proven before such clerk if it be
shown that the signatures are genuine. In this case the
genuineness of the signatures are not disputed, and the
securities were deemed sufficient by the clerk and the bond
approved by him. This would be sufficiently proven by the
simple fact, that it was filed away among the papers of the
proper cause without any evidence accompanying it, that it
was rejected; and the commissioner of sale has proceeded to
collect the moneys to secure which the bond was given. See
*McClure* v. *Colclough*, Ala. R. vol. 5 New Series p. 72, and
*State* v. *Dandridge*, 12 Wheat. 64; *Apthorp* v. *North*, 14 Mass.
167. This and more than this appears in this case.

Our statute does not require endorsement of the bond by
the clerk, any more than it requires the acknowledgment
and approval of the bond to be manifested by any matter of
record or by writing, though it is certainly prudent. in the
clerk to endorse on such bond its acknowledgment and ap-
proval. See *McClure* v. *Colclough*, 5 Ala., new series. It is
contended however, that in this case Sutton, by taking the
bond of the commissioner of sale with security, payable in
twelve months for the supposed balance due him, in consid-
eration of interest at the rate of ten per cent. per annum, re-
leased the securities on his official bond, on the ground that
any extension of time given to the principal, without the con-
sent of the sureties, operates a release of the securities. It
has been questioned, whether this admitted principle applies
to the bond of a sheriff or any other official bond. See *Norris*
v. *Crummey et al.* 2 Rand. 323. But, be this as it may, it
certainly has no application in this case. Sutton agreed to
take this new bond giving an extension of time in satisfac-
tion of his claim, if the commissioner of sale would execute
it with good security. And such an apparent bond was sent
to him, but the person whose name purported to be signed to
it as security testifies, that his name was forged. There is

no proof to the contrary, but it is proven that the commissioner of sale was indicted for forging this security's name to this bond, and that he thereupon fled the State. Of course the giving of this pretended bond did not for a moment suspend the right of Sutton to sue this commissioner of sale and his sureties, and therefore they are not thereby released. See *Harnsburger* v. *Geiger*, 3 Gratt. 144.

Again it is claimed, that the securities are not as reported by the commissioner and decided by the circuit court bound for the amount of the first bond of the purchaser, which it is claimed was paid before October 7, 1870, at which time the bond of the commissioner of sale and his sureties is dated. Many authorities are cited to show, that these sureties can can not be bound for moneys collected by the commissioner of sale before the execution of his bond. And these among other authorities are referred to as sustaining this position: *U. S.* v. *Giles*, 9 Cranch 212, and *Bruce* v. *U. S.* 17 How. 437.

It is unnecessary to consider this law question, as in my judgment the proof shows, that this bond was collected after the 7th of October, 1870. The only proof on this subject is the deposition of the purchaser, Bott, and his whole statement is: "I paid to said Cozad the commissioner of sale one thousand three hundred and eighty-five dollars divided into three payments of four hundred and sixty-one dollars and sixty-six and two third cents each. I paid said purchase-money in cash. The first payment I paid off before it fell due, and the other two as they fell due. I think but I am not certain, that the first note was paid shortly after it was given." The first note was for four hundred and sixty-one dollars and sixty-six and two third cents payable six months after date with interest from date, and it was dated July 5, 1870. The presumption is of course, that Cozad did not collect this note till he was authorized to collect it, that is till October 7, 1870, when he gave his bond. This evidence, it seems to me, was entirely insufficient to rebut this presumption. Cozad gave his bond three months before this first note fell due, and he gave it then, it is to be presumed, in order to put himself in a situation that would justify him in collecting this bond, as Bott wanted to pay it before it fell

due. To rebut this presumption an effort was made to prove, that he had given a previous bond as commissioner, but that it had been destroyed because of informalities in it; but the effort to prove this was a failure. The evidence satisfies me, that no other bond was ever given by Cozad as commissioner.

It is unnecessary and improper to determine or consider, whether there was a trust fund in the hands of Bennett, applicable to the payment of the plaintiff's claims. The plaintiff, Sutton, seems to have concluded to abandon his demand for this trust fund, and was satisfied to take a decree against Cozad and his sureties for his demand and interest and costs of suit. This he had a right to do, and the circuit court waived the consideration of this question as to how this fund in Bennett's hands was improperly applicable, reserving all the equities of all persons to this fund.

It is objected, that the amount of the commissioner's report of what was due the plaintiff is too great, as he charges interest on all the notes given by Bott, the purchaser of the land, from their date. And it is deemed, that as the decree directed the land to be sold on a credit of six, twelve and eighteen months from the day of sale without saying, that the purchase-money notes were to bear interest from the day of sale, that it ought to be presumed that Cozad, the commissioner, collected the purchase-money and the interest on it that would be due under the decree. But it is proven beyond controversy, that all the purchase-money notes did in fact bear interest from their date, and Bott proved, that he paid to Cozad all these purchase-money notes, which payments included the interest on these notes from their date.

As a matter of course, if it had been as is deemed a mere mistake in drawing the notes and this back interest was not really paid, it was perfectly easy to have proved, that this back interest was not received by Cozad, as Bott knew the fact and was examined. Finally it was claimed, that in the settlement made by Cozad with Sutton, when he gave him the note claimed to be forged, he gave it for a less sum than the commissioner reports to be due, and this settlement as it is called of the parties, ought not to be set aside. It could hardly be called a settlement, as there had been paid to Sutton but two sums ninety dollars and two hundred and ten

dollars, and these sums were to be deducted from the amount which remained in Cozad's hands, and the balance was to be paid to Sutton.    Sutton relied upon Cozad for the settlement of the amount in his hands, as commissioner, and if he misstated the amount it ought to be corrected, especially as in this very transaction, he settled the balance due from him by fraudulently giving to Sutton a forged bond.

With this proof before the court of the fraudulent character of Cozad's conduct in this transaction with Sutton, it could not hesitate to correct the amount stated by him to be due and to render a decree for the correct amount, there being as I understand there was, no doubt about what was the correct amount.    The decree was for the amount really due and is correct.

I am therefore of opinion, that the decree of March 6, 1878, should be affirmed and that the appellees, John S. Lyttle and John Sutton, guardian of William Sutton, must recover against the appellant their costs in this Court expended, and damages according to law.

JUDGES JOHNSON AND HAYMOND CONCURRED.

JUDGMENT AFFIRMED.