## Richmond.

## OFFTERDINGER v. FORD AND ANOTHER.

### FEBRUARY 20, 1896.

1. ATTACHMENT—*Condition of Bond—Suit by Defendant on Attachment Bond—Damages.*—Upon an attachment bond with condition to pay all costs and damages which may be awarded against the plaintiff in the attachment, or sustained by any person by reason of the plaintiff having sued it out, the defendant may maintain an action not only to recover damages awarded against the plaintiff in the attachment, but also other damages sustained by the defendant by reason of the attachment having been sued out without sufficient cause. The words " any person " include the defendant in the attachment.

2. ATTACHMENT—*Action on Attachment Bond—Lack of Sufficient Cause—Liability of Sureties—Trespass by Officer.*—In an action upon an attachment bond with condition to pay all costs and damages which may be awarded against the plaintiff in the attachment, or sustained by any person by reason of the plaintiff having sued it out, it is necessary for the plaintiff to prove that the attachment was sued out without sufficient cause. The sureties in the attachment bond, when the attachment has been sued out with good cause, are not responsible for the failure of the officer to discharge his duty, or for a trespass committed by him.

3. ATTACHMENT—*Removal of Goods in Course of Trade.*—The statute which authorizes a landlord to sue out an attachment against the goods of his tenant for rent not due, when the tenant intends to remove or is removing his effects from the leased premises, so that there will probably not be left on the leased premises property liable to distress sufficient to satisfy the rent when due, applies as well to removals in the regular course of business as to other removals. No exception is made in the statute. Sec. 4, ch. 148, Code of 1873.

4. ATTACHMENT—*Deed of Trust on Property on Leased Premises—Intention of Trustee to Remove.*—The trustee in a deed of ·trust given by the lessor on property after it has been carried on leased premises cannot remove the property from the leased premises without

securing to the lessor one year's rent. He can stand on no higher ground than the lessee. And the intention of the trustee to remove said property by sale or otherwise, without securing a year's rent, or leaving sufficient property liable to levy to pay a year's rent, is of itself sufficient cause for suing out an attachment by the landlord.

Error to a judgment of the Circuit Court of the city of Lynchburg, rendered November 24, 1892, in an action of debt, wherein the plaintiff in error was the plaintiff, and the defendants in error were the defendants.

*Affirmed.*

This case is the sequel of, *Offterdinger* v. *Ford*, 86 Va. 917. Ford & Mathews had let to Offterdinger, in 1885, a storehouse in the city of Lynchburg, at the agreed price of $1,100 *per annum.* The agreement between the parties was for a term of five years, but not being in writing and signed, as required by statute, Offterdinger, after the first year, became a tenant from year to year. The rent had been promptly paid till the year 1887, when the tenant began to fall behind, and ceased to pay promptly by the month as theretofore. Offterdinger conducted a restaurant and bar-room. He paid his license for May, 1887, but thereafter failed to pay, and was indicted for conducting business without license, and was fined in four cases in November, 1887.

On August 24, 1885, after Offterdinger had moved his personal property on the leased premises, he gave a deed of trust thereon to John M. Payne, trustee, to secure J. Phil Shaner a debt of nearly $1,500.

On August 17, 1887, John M. Payne inserted the following advertisement in the Lynchburg *Virginian,* a daily newspaper published in the city of Lynchburg :

*"Hotel and Restaurant for Sale.*

As trustee, and at the request of Mr. H. J. Offterdinger,

who desires to change his business, I offer for sale the good-will, stock, and fixtures of the well-known hotel restaurant at 1019 Main street, Lynchburg, Va.   Terms liberal.   Posses-sion given immediately.   Apply to

> JOHN M. PAYNE, Trustee,
> No. 811½ Main street."

At that time Offterdinger was not in the city of Lynch-burg.   He was not then in arrears for rent, and no goods were being removed from the leased premises except in regu-lar daily retail sales; but Ford says that both Offterdinger and Payne, the trustee, told him that Offterdinger could not continue in business, and soon thereafter Payne closed the house.   Thereupon the attachment was sued out, and an attachment bond given by Ford, with A. H. Burroughs as surety.   The proceedings in the attachment suit sufficiently appear from *Offterdinger* v. *Ford,* 86 Va. 917.

After that case was decided Offterdinger then instituted the present action of debt on the attachment bond. .The bond was in the penalty of $2,200, with the following condi-tion :

"The condition of the above obligation is such that whereas the said J. A. Ford and W. F. Mathews did, on the 22d day of August, 1887, upon complaint on oath of the said J. A. Ford, made in due form of law, before J. W. Breathed, a justice of said city, obtain from the said J. W. Breathed an attachment against the goods and estate of the said H. J. Offterdinger, for the sum of eleven hundred dollars, for rent to become payable by the said H. J. Offterdinger to the said J. A. Ford and W. F. Mathews within one year from the 22d day of August, 1887, in the manner following, that is to say : The sum of $91.66⅔ on September 1, 1887; the sum of $91.66⅔ on October 1, 1887; the sum of $91.66⅔ on Novem-

ber 1, 1887; the sum of $91.66⅔ on December 1, 1887; the sum of $91.66⅔ on January 1, 1888; the sum of $91.66⅔ on February 1, 1888; the sum of $91.66⅔ March 1, 1888; the sum of $91.66⅔ April 1, 1888; the sum of $91.66⅔ May 1, 1888; the sum of $91.66⅔ June 1, 1888; the sum of $91.66⅔ July 1, 1888; the sum of $91.66⅔ August 1, 1888; which said attachment is directed to the constable of the said city of Lynchburg, and is made returnable to the Corporation Court of the said city:

"Now, therefore, if the said J. A. Ford and W. F. Mathews shall pay all costs and damages which may be awarded against them, or sustained by any person by reason of *his* suing out the said attachment, then the above obligation to be void, otherwise to remain in full force."

The defendants demurred to the declaration, and to each count thereof; and the demurrer being overruled, they thereupon tendered four pleas, to the reception of each of which the plaintiff objected; but the court overruled the objection to Pleas Nos. 1, 2, and 3, and permitted them to be filed; to which the plaintiff excepted. These pleas were as follows:

*Plea No. 1.*

"And the said defendants, by their attorney, come and say that the plaintiff ought not to have or maintain his action aforesaid thereof against them, because they say that the said James A. Ford and W. F. Mathews did, from time to time, and at all times, after the making of the said writing obligatory in the declaration mentioned, and the said condition thereof, well and truly observe, perform, fulfil, and keep all and singular the articles, clauses, payments, conditions, and agreements in the said condition of the said writing obligatory mentioned, in all things therein contained on their part to be observed, performed, fulfilled, and kept, according to

the terms and effect, true intent and meaning of the said condition of the said writing obligatory.

"And this the said defendants verify.   Wherefore they pray judgment if the said plaintiff ought to have or maintain his action aforesaid thereof against them."

## *Plea No. 2.*

"And the said defendants, by their attorneys, come and say that the plaintiff ought not to have or maintain his action aforesaid thereof against them, because they say that in the attachment proceeding in the declaration mentioned, instituted by the said James A. Ford and W. F. Mathews against the said plaintiff, such proceedings were had in the Supreme Court of Appeals, to which the same was carried by the said plaintiff upon a writ of error to the said Corporation Court of Lynchburg, that there was awarded to the said plaintiff, by judgment of the said Supreme Court of Appeals, against the said James A. Ford and W. F. Mathews, the sum of six hundred and twenty-six dollars and ninety-five cents ($626.95), with interest thereon from the 22d day of September, 1887, for his damages sustained by reason of suing out the identical attachment in the declaration mentioned, together with his costs by him about the prosecution of his writ of error aforesaid in the said last-mentioned court, and his costs by him about his defence in the said Corporation Court of Lynchburg, in that behalf expended, whereof the said James A. Ford and W. F. Mathews were convict, as by the record and proceedings thereof in the said Supreme Court of Appeals, certified according to law to the said Corporation Court of Lynchburg, and the records of said last-mentioned court, still remaining in said last-mentioned court, fully appears ; and which said judgment the said James A. Ford and W. F. Mathews have fully satisfied and discharged to the said plaintiff by payment to him of the said sum of $626.95, with

interest and costs as aforesaid, as by reference to the records, still remaining in the said Corporation Court of Lynchburg, will fully appear.

"And this the defendants are ready to verify by the said record. Wherefore the defendants pray judgment whether the plaintiff ought to have or maintain his action aforesaid thereof against them."

### Plea No. 3.

"And the said defendants, by their attorney, come and say that the plaintiff ought not to have or maintain his action aforesaid against them, because they say that the attachment in the declaration mentioned was not sued out without good cause, and was quashed by reason of a defective return of the officer to whom the same was legally directed, and not for want of sufficient cause, nor by reason of any wrongful or malicious or other illegal act of the said J. A. Ford and W. F. Mathews, the plaintiffs therein, or of either of them.

"And this they are ready to verify. Wherefore they pray judgment if the said plaintiff ought to have or maintain his action aforesaid thereof against them."

After the evidence was all in, the plaintiff asked the court for three instructions, and the defendant asked for four, to the giving which latter the plaintiff objected; but the court overruled the objection, and gave the instructions asked by the defendants, and refused to give those asked by the plaintiff; to which action of the court the plaintiff excepted. The following are the instructions:

### Plaintiff's Instructions, Refused by the Court.

No. 1. "If the jury believe from the evidence that, prior to the suing out of the attachment by the defendant, J. A. Ford, which was levied on the plaintiff's goods, and under

said attachment they were sold, there had been no removal of any of the plaintiff's goods from the leased premises by the plaintiff, or by any other person by his authority, except sales made in the course of business at his bar and in his restaurant, such sales were not a removing in the sense of attachment law, and would not justify the suing out of the attachment on the ground that the plaintiff was removing or had removed his goods, or some of them; and if the jury further believe from the evidence that the only fact on which the said J. A. Ford relied to show that the plaintiff intended to remove his goods from the leased premises was the advertisement made by J. M. Payne, trustee, in the words and figures following:

' *Hotel and Restaurant for Sale.*

As trustee, and at the request of Mr. H. J. Offterdinger, who desires to change his business, I offer for sale the goodwill, stock, and fixtures of the well-known hotel restaurant at 1019 Main street, Lynchburg, Va. Terms liberal. Possession given immediately. Apply to

JOHN M. PAYNE, Trustee,
*Aug.* 4, '87, 3taw-ts.    No. 811½ Main street.'

' I hereby certify that the above is a copy of an advertisement which was inserted in the *Daily Virginian* August 17, 1887.

JNO. H. FAULKNER,
Assistant Business Manager Daily Va.

*Lynchburg, Va.,* Nov. 18, 1891.'

" Then such advertisement and proposed sale by the said trustee, under the deed of trust shown · in evidence, and for the purpose thereof, was not sufficient cause for the suing out of said attachment, on the ground that the plaintiff intended

to remove his goods from the leased premises, and the jury ought to find for the plaintiff such damages, if any, as the plaintiff may have proved."

No. 2. "If the jury believe from the evidence that the only removal of goods of the plaintiff from the leased premises which were contemplated was such removal, if any, as could be inferred from the advertisement of the sale of such goods by J. M. Payne, trustee, shown in evidence, and in pursuance of the deed of trust of the 24th August, 1885, then such advertisement, and a sale in pursuance thereof, would not be such removal of the goods from the leased premises as is contemplated by the attachment law; and unless the jury believe from the evidence that the plaintiff had removed, and was removing, his goods, otherwise than by sales in the course of his usual business, there was no sufficient cause for the suing out of said attachment and selling said goods thereunder, and the jury ought to find for the plaintiff such damages, if any, as the jury may find from the evidence that the plaintiff has sustained by reason of the suing out of said attachment and the selling of said goods thereunder."

No. 3. "If the jury believe from the evidence that the goods upon the leased premises, which, when seized and sold by the high constable, under the attachment sued out by the defendant, J. A. Ford, were conveyed, after the commencement of the plaintiff's tenancy, by the plaintiff to J. M. Payne, under the deed of trust of the 24th day of August, 1885, then the said trustee had no right to remove said goods from the premises, except on the terms of paying so much rent (if any) as was due at the time of such removal, and securing to the landlord so much as was to become due, what was so paid and secured not to be more altogether than one year's rent. And if the jury further believe from the evidence that when the said attachment was sued out the said trustee offered to the defendant, Ford, to provide, out of the proposed sale under

the deed of trust, for the payment of what was so secured to him by the law, and that said Ford refused, and proceeded to sue out and cause to be levied said attachment, then said attachment was sued out without sufficient cause, and the jury ought to find for the plaintiff such damages, if any, as the plaintiff may have suffered by reason of the suing out of the said attachment."

## *Defendant's Instructions, Given by the Court.*

No. 1. " The jury are instructed that if they believe from the evidence that the attachment sued out by Ford & Mathews against the plaintiff, in August, 1887, was sued out with sufficient cause, then the jury will find a verdict for the defendants; and the burden of showing the absence of sufficient cause rests upon the plaintiff."

No. 2. " The court instructs the jury that if they believe from the evidence that the plaintiff, H. J. Offterdinger, was removing, was about to remove, or had, within thirty days before the issuance of the said attachment, removed any of his effects from the leased premises (whether with a fraudulent purpose or not, or whether any rent was then due or not), then such removal, or contemplated removal, was of itself sufficient cause for the said attachment, and the plaintiff is not entitled to recover anything in this action, unless the jury believe that there was, or would have been, left on the premises property liable to distress sufficient to satisfy a year's rent."

No. 4. " The court instructs the jury that they cannot in this case consider any element of damage not the legitimate result of the suing out of the attachment, and that, if. they believe from the evidence that James A. Ford purchased, at the constable's sale under said attachment, a part of the said lease, no damage can be awarded to the plaintiff in this action for deprivation of the premises after the expiration of that portion of the. lease so purchased."

No. 5. " The jury are instructed that if they believe from the evidence that there was a deed of trust on the property attached, to J. M. Payne, trustee, made by the plaintiff after the property was carried on the leased premises, and such trustee intended to remove any of the said property from the leased premises, by sale or otherwise, not leaving sufficient property on the leased premises to satisfy a year's rent, and without securing to the landlord a year's rent, such intention on the part of said trustee was of itself sufficient cause for suing out the said attachment."

There was a verdict for the defendants, which the plaintiff moved the court to set aside; but the court overruled the motion, and entered judgment for the defendants, and the plaintiff excepted.

*John M. Payne,* for the plaintiff in error.

*S. S. P. Patteson* and *W. M. Lile,* for the defendants in error.

BUCHANAN, J., delivered the opinion of the court.

The demurrer to the declaration in this case is based upon two grounds.

First. That the damages claimed must have been awarded against the plaintiffs in the attachment proceedings in an independent action against them before the sureties in the attachment bond could be called upon to answer in damages.

Second. That the declaration claims damages which resulted not only from suing out the attachment, but also for " the sale made and proceedings had under color of the attachment."

The condition of the bond sued on provides, first, that the obligors therein shall pay all costs and damages which may

be awarded against the plaintiff in the attachment, and, secondly, that they shall pay all damages sustained by any person by reason of the plaintiffs having sued it out.

The surety in the bond stands upon the precise terms of his contract, and his liability cannot be extended beyond its terms. Upon the first undertaking in the bond no action could be maintained against the surety until the costs and damages had been awarded against the plaintiff in the attachment.

There was no breach of that condition in the bond until the costs and damages had been ascertained and awarded, and default made in their payment. The surety has not undertaken to pay—in fact, he does not know what he has to pay— until the costs and damages have been awarded. There could be no proper assignment of the breach of such condition until the liability of the surety had accrued and the condition had been broken. It would be an anomaly in pleading if an action could be brought before the breach had occurred.

The contention that the damages will be awarded in the action upon the bond, and the fact thus ascertained, upon which the surety becomes liable, cannot be sustained. The right to recover depended upon facts in existence, and upon default made prior to the institution of the action on the bond, and not upon facts ascertained and default made at the end of the action.

When it is remembered that under sec. 32, ch. 148, Code of 1873, (sec. 2990, Code of 1887,) it is not necessary that the plaintiff in the attachment should be a party to the attachment bond, it more clearly appears that it was never contemplated that the costs and damages which the obligors in the bond undertook to pay, when awarded, should be ascertained and awarded in an action on the bond against them.

The damages ascertained and awarded in such action would be awarded, not against the plaintiff in the attachment,

where he is a party to the attachment bond, but against him and his surety on that bond. And where he was not a party to the bond they would not be awarded against him at all, but against the bondsmen only. It would be a strange misuse of language to say, in either case, that the damages awarded against the obligors in the bond were damages awarded against the plaintiff in the attachment. 2 High on Injunctions, sec. 1640; *Sledge* v. *Lee*, 19 Ga. 411; *McLuckie, &c.* v. *Williams*, 68 Md. 262; 1 Wade on Attachments, sec. 298; *Tarpey* v. *Shillenburger*, 10 Cal. 390.

But whilst the plaintiff in this case had no right to bring an action upon that provision of the bond by which the obli gors therein undertook to pay all costs and damages which might be awarded against the plaintiff in the attachment, he had the right to maintain his action on the other provision in it, by which they undertook to pay all costs and damages which might be sustained by any person by reason of the suing out of the attachment.

The words "any person" are broad enough to include the defendant in the attachment, and if it had been intended to exclude him from the benefit of that provision, and to confine him exclusively to the other provision of the bond for indemnity, the ordinary and natural mode of expression would have been to say "any other person," and not "any person."

Not only does the language used include the defendant, but there are strong reasons why he should have been included. Under section 30, ch. 148, Code of 1873, it was provided that the defendant might make defence in the attachment suit on the ground that it was sued out without sufficient cause, and, if the court or jury found that the defence was well founded, judgment could be entered against the plaintiff in favor of the defendant for the damages sustained. And when the defendant had obtained such a judgment, if it were not paid, he could bring his action upon the attachment bond, and re-

cover on that provision of the bond by which the obligors in it had undertaken to pay all costs and damages which might be awarded against the plaintiff in the attachment. But where the defendant in the attachment could not make defence, as was frequently the case, because he had no actual notice of the proceedings until it was too late to make defence, what is his remedy if he has no right to sue upon the bond? He will be compelled to resort to his action on the case for damages. In such action he cannot recover, however great his damages may be, merely on the ground that the attachment was sued out without sufficient cause; but he must allege and prove that it was sued out with malice and without probable cause. If he be successful in his action on the case, and gets judgment, it is by no means clear that the sureties on the attachment bond are liable for anything but the actual damages which he has suffered by reason of suing out the attachment.

If he prove in his action on the case that the attachment was sued out without sufficient cause, and that he had sustained great damages, but fails to prove that it was sued out with malice and without probable cause, he can recover nothing in that action, and must pay the costs of his failure.

The result of suing out the attachment without sufficient cause may have been to ruin him financially. He has no remedy at common law, because he cannot prove malice and want of probable cause. He has no remedy on the bond, unless included in the words " any person," for damages have not been, nor is there any proceeding by which they can be, awarded against the plaintiff so as to bring him within the condition of the bond.

The result, therefore, of construing the words " any person " to mean any person other than the defendant in the attachment proceeding would be practically to destroy the value of a statute passed for his protection, and to render worthless as

to him a bond required for his indemnity.   This is especially true under the Code of 1887, from which is omitted sec. 30 of ch. 148 of the Code of 1873, which gave them the right to make defence in the attachment proceeding, on the ground that the attachment was sued out without sufficient cause, and have his damages awarded against the plaintiff.

Again, there is no good reason why the defendant in the attachment proceeding should be driven to an independent action against the attachment creditor for suing out the attachment without sufficient cause, when the damages can be as readily ascertained in the action on the bond, to which the surety will be a party and in which he can make all legal defences.

By allowing an action to be brought on the bond in the first instance unnecessary, dilatory, and vexatious litigation is avoided, and the whole controversy is litigated and settled in a single action, as common sense would seem to dictate.

We are satisfied that the defendant in the attachment is within both the letter and the spirit of the statute, and is entitled to sue upon the bond.   See Judge Moncure's opinion in *Davis* v. *Commonwealth, for, &c.,* 13 Gratt., at pages 145 to 149.

The other ground of error, as stated above, is that the declaration claims damages not only as the result of the suing out of the attachment, but for the "sale aforesaid and the proceedings under color thereof."

This ground admits that the plaintiff's declaration is sufficient in so far as it avers that the attachment was sued out without sufficient cause, and claims damages therefor.

Even if the plaintiff had no right to recover damages for the other injuries complained of in the declaration (and upon that question we express no opinion), such averments would furnish no ground for sustaining the demurrer.   They would be mere surplusage, and could not render insufficient a decla-

ration which is admittedly good without them.    Surplusage
is not a subject for demurrer, the maxim being that *utile
per inutile non vitiatur.*    Steph. Pl. 424 ; 4 Minor's Inst. 1264
(3d ed.) ;  5 Rob. Pr. 306.

The demurrer was properly overruled.

The defendant's Plea No. 3 and their Instruction No. 1
involve the same question, and will be considered together.
The proposition of law contained in them is that it was the
duty of the plaintiff to prove that the attachment was sued
out without sufficient cause before they were entitled to
recover.

This, we think, is a correct statement of the law.    It is
true that the form of the· bond as prescribed by the statute
does not in terms provide that the costs and damages which
may be awarded or sustained by reason of suing out the
attachment shall be paid only in the event that it is sued out
without sufficient cause.    But it could not have been intended
that where the attachment was sued out with good cause, and
afterwards quashed or abated for the failure of the officer to
perform his duty, as in this case, that the sureties on the bond
should be liable for damages.    They ought not to be held
responsible either for the failure of the officer to perform his
duty, or for a trespass committed by him.

The effect of the undertaking of the obligors in the bond,
as was said by Judge Moncure in *Davis* v. *Commonwealth,*
13 Gratt. 145, is that the attachment is properly sued out, and
that the plaintiff's claim is well founded.

This seems to have been the view of the plaintiff's counsel
when his declaration was framed and filed, as it, following
approved forms, contains the averment that " the attachment
was sued out without sufficient cause." 4 Minor's Inst. 1657–8
(3d ed.) ;  4 Rob. Pr. 148.

By the defendants' Instruction No. 2, which was objected
to, and the giving of which is assigned as error here, the

court instructed the jury that the lessor of property has the right to sue out an attachment for rent not due, but to become due within a year, when the lessee intends to remove, or is removing, or has within thirty days removed his effects from the leased premises, where there is not, or he believes that unless an attachment issues there will not be, left on the leased premises property liable to distress sufficient to satisfy the rent to so become due and payable.

It is insisted that section 4 of chapter 148 of the Code of 1873, under which the attachment was sued out, was never intended to prevent a lessee, in the regular course of business, from removing his effects from the leased premises, and to so hold would seriously interfere with, if not ruin, many kinds of business conducted on leased property. This may be true, but the statute makes no exception in favor of any one. It provides that the lessor has the right to sue out his attachment whenever the lessee intends to remove, is removing, or has removed, within thirty days, his effects from the leased premises, so that there is not, or he believes unless an attachment issues there will not be, left on such premises property liable to distress sufficient to satisfy the rent to become due and payable within one year.

The statute has been in force in its present form at least since the adoption of the Code of 1849, and the construction placed upon it by the trial court has been the construction generally given it, it is believed.

During the long period it has been in force, now nearly fifty years, the provision under consideration does not seem to have been amended. This fact alone would seem to show that, in its practical effect and workings, it has accomplished the object for which it was passed, and has met with the approval of the people of the State and their law-makers. But be that as it may, the language of the statute is too plain to admit of any other construction than that which was given it by the trial court.

The defendant's Instruction No. 5, the giving of which is also assigned as error, informed the jury if they believed from the evidence that there was a deed of trust on the property attached, given by the plaintiff after it was carried on the leased premises, and such trustee intended to remove said property from the premises by sale or otherwise, not leaving on the leased premises sufficient property to satisfy one year's rent, and without securing to the lessor one year's rent, then such intention of the trustee was of itself sufficient cause for suing out the attachment.

The trustee in the deed of trust given by the lessee to secure other creditors had no right to remove from the leased premises property which the lessee himself could not remove without giving the lessor the right to sue out an attachment. The trustee, at least as between the lessor and the lessee, was merely the agent of the latter, and could do no act to the prejudice of the former which his principal could not do. Before he had the right to remove the property from the leased premises it was his duty to secure the payment of the rent to the lessor for a period not exceeding one year, as is required by sec. 12, ch. 134, Code of 1873 (sec. 2792, Code 1887). Until he complied with the terms of that statute he had no right to remove the property. The instruction, we think, under the facts of this case, correctly stated the law.

The instructions which the plaintiff requested the court to give were properly rejected. They were in conflict with the instructions which the court did give, at the instance of the defendants, and which, as we have before seen, correctly laid down the law by which the jury were to be governed in reaching their verdict.

Upon the whole case, we are of opinion that the judgment of the Circuit Court should be affirmed.

*Affirmed.*