# CHARLESTON.

## TOTTEN *v.* HENRY.

Submitted January 23, 1899—Decided April 1, 1899.

ATTACHMENT—*Attachment Bond—Damages.*

> A claimant of property seized or sold under an attachment may recover damages in an action upon the attachment bond without having in the first instance recovered damages in an independent suit against the plaintiff in the attachment. (p. 234).

Error to Circuit Court, McDowell County.

Action by Myer Henry against H. P. Totten. Judgment for plaintiff. Defendant brings error.

*Affirmed.*

Flournoy, Price & Smith and G. W. S. Musgrave, for plaintiff in error.

Johnson & Hale, for defendant in error.

Brannon, Judge:

Epstein brought a chancery suit in McDowell County agains Bloom and others, and sued out an attachment against the estate of Bloom, giving an attachment bond. The attachment was levied on a stock of goods in the possession of Henry, who claimed the goods as his own, denying that they belonged to Bloom; and upon the trial of the right of property Henry sustained his claim to the goods, and then brought an action upon the attachment bond in said county against Epstein and his surety to recover damages for the seizure of the goods. Epstein was not served with process, and the suit abated as to him, but Totten, the surety in the bond, was served with process, but, he not appearing to defend, a judgment by default was rendered against him. Later Totten, after notice to Henry, made a motion before said court to reverse and set aside the judgment against him, but the court overruled and dismissed his motion, and from the judgment of dismissal Totten obtained this writ of error. The ground upon which Totten asked the circuit court to reverse said judgment is that the declaration in the action shows no cause of action, inasmuch as it does not aver that, before action was brought on the attachment bond, Henry had recovered judgment in an independent action against Epstein for damages for the seizure of his property under said attachment. Counsel for Totten contends that a claimant of property seized under an attachment, who is not a party to it, cannot sue for damages suffered by him from such seizure until he shall have first brought an action against the plaintiff in the attachment, recovered judgment, and the attachment plaintiff has failed to pay it. When the statute provided that the bond should be conditioned to "pay all costs and damages which may be awarded against him (plaintiff), or sustained by any person by reason of the suing out of the attachment," without the additional provision now found in the statute (Code, c. 106, s. 6) that the bond should also provide "to pay any claimant of any

property seized or sold under or by virtue of said attachment all damages which he may recover in consequence of such seizure or sale," it was held that only the defendant in the attachment could sue upon the bond, and that a third party whose property was wrongly taken had no redress upon the bond. *Davis* v. *Com.*, 13 Grat. 139. Then the Legislature made the addition above quoted. That addition is an independent clause, not at all related to those made for the benefit of the attachment debtor, and we must give this clause a construction and effect suitable to the condition and wants of this third party's case. It is said he must first, in an independent suit, recover damages against the party suing out the attachment, before he can sue on this bond. That would say that in cases where by law he can recover against the plaintiff in the attachment he must first do so. Why make him bring two suits when the matter may as well be tried in an action on the bond? But what is the injured person's relief in those cases where the law does not allow him to recover damages from the attachment plaintiff? The plaintiff in an attachment, where there is jurisdiction, is liable to damages for the officer's seizure of a stranger's property, if he directed such levy; but he is not liable for merely suing out the attachment, though without sufficient grounds, except he did so maliciously,—I mean under the common law. *Id.* 142; *Ogg* v. *Murdock*, 25 W. Va. 139; Cooley, Torts, 548; 1 Shinn, Atachmt. § 362. Where, then, is a person whose property is wrongfully seized by an officer under an attachment, not instigated by the plaintiff, to get any redress, if the construction sought to be put upon this clause of the bond be granted? He cannot sue the officer, as the Code says that when this bond is given the officer shall not be sued. He could be made to answer at common law, and, as he acts *colore officii* (by color of office), his bond would afford redress to the injured third party, if he could be sued, as he could at common law. *Lucas* v. *Locke*, 11 W. Va. 81. Yet, the obligors in this bond, having by it taken from Henry his common-law action against the sheriff, leave him none in place of it, if the bond does not answer. Ought not the bond give him as much remedy as the common law gave? The statute intended to take the burden

off the sheriff, and does this not tell the plaintiff that he must look to the bond? The bond is a substitute for that mode of redress in those cases where he, and not the plaintiff, is liable for the wrongful levy. Of course, as to cases where the plaintiff would be liable without bond for participating in the wrongful levy, the bond was designed as a cumulative remedy. The true intent in the requirement of this bond was to make the plaintiff assume the liability falling on both himself and the officer at the common law, and give the third party the full redress given by the common law, not to lessen it, and to make him answer both for maliciously suing out the attachment and for suing it out without good cause; and, moreover, to make him give covenant and assurance by bond, and to give security. But there is the word "recover," which, as counsel says, shows that actual recovery in an independent suit must precede suit on the bond, and that such is the letter of the surety's undertaking, which cannot be enlarged. Generally, this argument would hold; but to allow it here, would emasculate the provision in a majority of cases where the third party would need it, where nothing could be imputed to the plaintiff but suing out the attachment. Why not say that it means as if it said, "recover in an action on such bond"? It covenants to pay such damages as may be recovered. That is all. What is there unreasonable in saying it means damages recovered in an action on the very covenant itself? If a party covenants to pay damages, you would sue on the covenant. If it said pay "damages which may be recovered," it would not alter the case. It would mean damages ascertained in an action on the covenant itself. Where is the sense in driving a party to a suit to recover damages, and then to turn around and bring another on the bond to recover just what the bond stipulates to pay,—to do the same thing? Convenience and avoidance of litigation and cost argue for this view. It benefits both sides. The obligors agreed to this, and they can have full trial in the action on the bond. As to the surety it is better, for, though not a party to an independent suit, he would, without a chance of defense, be finally bound by its judgment. *State* v. *Nutter*, 44 W. Va. 385, (30 S. E. 67). That case says the surety stands on the letter of his con-

tract. So he does; but, as there stated, if the law gives a
bond when executed a certain legal import and obligation,
that law is a part of its letter. But what of the case of
*Offterdinger* v. *Ford*, 92 Va. 636? It bears not on this
case, except to sustain the position that suit may, in the
first instance, be on the bond. True, it does hold that the
defendant in an attachment cannot recover damages sus-
tained under the first clause for the payment of "all costs
and damages which may be awarded against" the plaintiff.
Now, remember that this clause and the clause for the pay-
ment of damages "sustained by any person by reason of
the suing out of the attachment" go together to give re-
dress to the defendant in the attachment under the case in
13 Grat. They mean that the bond shall answer for costs
and the damages awarded in the attachment suit or in an-
other suit, if there has been such award, and, if not, then
to pay damages sustained to be first recovered on the bond.
Now, as the defendant has those two clauses for his help,
we have to give each its meaning and function, because
there are the two different clauses, each having a purpose;
but the claimant has a different and independent single
clause, and we are not called on to discriminate between
two clauses, but we are called on to give this separate
clause its meaning to suit the case of him for whom it was
made, to answer his needs and relief. That Virginia case
is on other clauses; but it contains reasoning applicable in
this case to show the inconvenience and unreasonableness
of requiring a separate suit under the clause in quesiton.
In other States there is a contrariety of decision, and the
provisions of their statutes as to the bonds and other fea-
tures bearing on them are so various that little light can
be gotten from them. I can safely say, however, that the
authorities show a decided trend, wherever it is possible,
to promote the remedy by dispensing with a preliminary
suit, and allowing suit at once on the bond. Drake, At-
tachm. § 166, says: "The question arises whether, in
order to maintain an action on the bond, the damages must
first be recovered in a distinct action. This is not believed
to be requisite, and it was so decided in Virginia, where
the bond is to pay 'all such costs and damages as may ac-
crue for wrongfully suing out the attachment.' *Dickinson*

v. *McGraw*, 4 Rand. 158." In *Smith* v. *Eakin*, 2 Sneed, 456, the bond was to pay "all damages which shall be recovered against the plaintiff in any suit which may be brought against him for wrongfully suing out the attachment." Preliminary suit was dispensed with. So, in *Churchill* v. *Abraham*. 22 Ill. 456, where the bond was "to pay all such costs and damages as shall be awarded against the plaintiff in any suit which may be hereafter brought for wrongfully suing out the attachment." 1 Wade, Attachm. § 298, condemns conditions postponing the injured party's remedy till after he has recovered judgment against his principal adversary as dilatory and vexatious, and requiring a multiplicity of actions "to determine questions of right that common sense would declare ought to be settled in a single suit." He further says "that, as a general rule, when the statutory form of bond is followed, action thereon may be brought without any preliminary suit." All this tells us that we ought not, if we can avoid it, give this clause the construction contended for, which would only promote delay, litigation, and cost, and take from the statute a great part of its efficacy as a remedial statute. For these reasons we affirm the judgment.

*Affirmed.*